417 P.2d 417

LIBERTY MUTUAL INSURANCE COMPANY, a corporation, and American Potato Company, a corporation, Plaintiffs-Respondents,

v.

Ferris C. ADAMS, and Union Pacific Railroad Company, a corporation, Defendants-Appellants.

No. 9640.

Supreme Court of Idaho.

July 14, 1966.

Rehearing Denied Sept. 9, 1966.

E. Ċ. Phoenix and D. A. Bybee and F. L. Ringe, Pocatello, Bryan P. Leverich, Salt Lake City, Utah, for appellants.

Milton E. Zener and Vern E. Herzog, Jr, Pocatello, for respondents.

McFADDEN, Chief Justice.

This action was instituted by the corporate plaintiffs-respondents, Liberty Mutual Insurance Company and the American Potato Company (referred to herein as the Insurance Company and the Potato Company respectively), against the defendants-appellants, Ferris C. Adams and the Union

Pacific Railroad Company, a corporation (referred to herein as the Railroad Company). The plaintiffs sought to recover payments made under the workmen's compensation law by the Insurance Company as surety for the Potato Company to respondent Adams by reason of injuries Adams sustained in an industrial accident. The respondents sought judgment against the Railroad Company for the sum paid Adams, by reason of an indemnity agreement which was a part of a settlement of a personal injury claim by Adams against the Railroad Company. Respondents' claim for reimbursement is predicated upon the provisions of I.C. § 72–204[1].

The Railroad Company filed its counterclaim against the respondents seeking recovery of the amount it paid Adams in settlement of his claim against the Railroad Company, this being based on indemnity agreements contained in two separate agreements, between the Railroad Company and the Potato Company, which agreements are designated as an "Industry Track Contract" and a "Private Road Crossing Contract."[2]

Following trial the court entered findings of fact, conclusions of law and gave judgment for respondents against both Adams and the Railroad Company, for reimbursement of workmen's compensation payments made to Adams, and denied the Railroad Company's claim for sums it paid to settle Adams' claim against it; from the judgment this appeal was taken.

The facts leading to this controversy are as follows: At the end of their normal shift at midnight, January 15, 1962, Adams and three other employees of the Potato Company at its plant near Blackfoot, were required to remain on duty to help in the switching of a boxcar partially loaded with dehydrated potato products of the company. This boxcar was situate adjacent to the company's plant, on a 1,181 foot long dead-end spur track which was connected to the main track of the railroad company. The switch point was just to the west of a private road across the railroad right-of-way leading to the potato company's plant.

On the night in question a milk car was to be placed on a spot between the end of the spur track and the partially loaded car. This maneuver had to be accomplished by moving the partially loaded car along the spur track to the main line, leaving it there while the milk car was properly placed, and then returning the partially loaded car to its original location.

The train bringing the milk car arrived at the potato company plant about 1:00 a. m. The locomotive entered the spur track after being uncoupled from the train on the main track and leaving the carload of milk on the "pocket track," just west of the private road crossing. During this movement on the spur track, the engine picked up six cars, the last one being the partially loaded car. At that time the Railroad Company's train crew determined that the cars should be moved just off the spur track, to result

1. § 72–204. "LIABILITY OF THIRD PERSONS.—When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, and the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action."

2. Thus involved in this appeal are three separate indemnity agreements, denominated herein as the Adams settlement indemnity agreement, the Industry Track Indemnity, and the Road Crossing Indemnity.

**154**

in the partially loaded car blocking the private road crossing.

Both ends of the partially loaded car (¾ full) contained fairly high stacks of cartons of the dehydrated potato, which by their nature were unusually subject to shifting and upsetting. The center of the car was free of cartons, but contained several metal sawhorses, used in conjunction with loading conveyors. Although the car had been in this condition for an hour and a half before it was hooked on to the locomotive, nothing had been done to brace the stacked cartons or to remove the metal sawhorses.

When the train arrived, Adams and his co-workers, with the knowledge of the 'train crew, entered the partially loaded car. Two men at each end held sheets of cardboard against the stacks of cartons to prevent them from falling. Thereafter the train crew proceeded with the train movement. At the time the train stopped at the crossing a jerking movement caused the stacked cartons on the top of a stack to shift so far forward that they appeared about to fall. The men in the car, with the assistance of the train conductor unsuccessfully tried to straighten the stack. At about the time it appeared impossible for the men to shift the load back to its original position with their own efforts, the lights of a vehicle were seen approaching on the private roadway, which was blocked by the partially loaded car. The witnesses disagree as to whether the car was moved forward to clear the roadway for the oncoming vehicle, or to "jerk back" the load; but it is undisputed that soon after the first stop, the train again moved to the east so that the partially loaded car was clear of the crossing.[3] As the train moved from the private road crossing and again stopped, the unstable load toppled over, and respondent Adams was injured when he ran into one of the metal sawhorses while attempting to avoid the falling

cartons. His injury was compensable under the workmen's compensation law, and respondents paid him compensation and medical expenses on his behalf, totalling scme $3,899.00. The respondents brought this action for the recovery of this sum.

Shortly after sustaining his injuries, Adams brought a negligence action against the railroad company to recover damages for the injuries he received. That action was settled by agreement of Adams and the Railroad Company, Adams receiving $17,500. Also as a part of the settlement the Railroad Company agreed to indemnify Adams against any claims interposed by his employer or its surety for reimbursement of sums paid under the workmen's compensation law.

■ The Railroad Company assigns as error the trial court's finding that it was liable for reimbursement of the sum paid Adams under the workmen's compensation law. It asserts that the Potato Company was itself guilty of concurrent negligence which contributed to the injury of Adams and hence should not be allowed to be reimbursed for its own wrong. Respondents, however, contend that under the pretrial order, appellants cannot now question the determination of liability. Respondents also assert that I.C. § 72–102 withdraws from any workmen's compensation proceeding the issue of negligence on either the part of the employer or employee. Continuing, they contend I.C. § 72–204, regarding the liability of third persons under the compensation law, is a part of that law and should be construed in connection with the stated purpose of I.C. § 72–102, citing Lake v. State, 71 Idaho 107, 227 P.2d 361 (1951), for the proposition that, "The right of the employer to recover against a third party is a statutory right and would not exist except for the provisions of Workmen's Compensation Law."

3. The railroad does not dispute the finding that having seen the plight of the men trying to hold up the unstable load, the train crew was negligent in allowing the move to be made while the men were still in the car and/or jerking the load so that it fell.

The Railroad Company is correct in its contention that the Potato Company's concurrent negligence contributed to Adams' injuries. The trial court found that both the Railroad Company and the Potato Company were negligent, which negligence concurrently contributed to the injury of Adams. The court found the Railroad Company negligent in moving the car involved while the Potato Company employees were in it, in violation of rules and customs of the railroad company, and in moving the car following the first stop, knowing of the dangerous condition of the partially loaded car; and found the Potato Company negligent in requiring its employees to remain in the railroad car during the switching and other movements of such car. This finding is fully sustained by the evidence.

 The question thus presented is whether an employer whose negligence along with the negligence of a third person, concurrently contributed to the injury of an employee may seek reimbursement from such employee who has recovered sums for his injuries from the third party.[4]

This court has never determined this question. However, in the case of Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789 (1953), while the majority of the court declined to consider the issue, it was discussed in a dissenting opinion by Justice Taylor, as follows:

"However, since it clearly appears that there was negligence on the part of the county in matters over which it had control, which contributed to the injury, and without which the injury would not have occurred, and such negligence, being independent of and not imputed to the county because of any alleged contributory negligence on the part of Brown, and which negligence on the part of the county was also independent of any negligence on the part of Skinner, neither Brown, his employer, nor its insurance

carrier, is entitled to recover the amount of the compensation award. In other words, where independent negligence on the part of the employer contributes to, or combines with, the negligence of the defendant to cause the injury, and where the employer and the third party defendant are not joint tort-feasors, but are severally liable as independent tort-feasors, and the negligence of the employer is not merely such as is imputed to him for negligence of the injured employee, the employer's negligence is a pro tanto defense available to the third party. The case of Essick v. City of Lexington, 232 N.C. 200, 60 S.E.2d 106, and Id., 233 N.C. 600, 65 S.E.2d 220, is in point on both law and facts. The reasoning underlying the rule, and which expresses the views of the writer on this phase of the case, is very clearly and forcefully set out by the North Carolina court in Poindexter v. Johnson Motor Lines, 235 N.C. 286, 69 S.E.2d 495; and Lovette v. Lloyd, 236 N.C. 663, 73 S.E.2d 886. See, also, 71 C.J., Workmen's Compensation Act, § 1611, and subsequent annotations; 58 Am.Jur., Workmen's Compensation Act § 359 and annotations; Woodland v. Portneuf Marsh, etc., Co., 26 Idaho 789, 146 P. 1106; Verheyen v. Dewey, 27 Idaho 1, 146 P. 1116. The liability is otherwise, at the election of the injured party, in the case of joint tort-feasors. Lorang v. Hays, 69 Idaho 440, 209 P.2d 733." 74 Idaho at 358–359, 262 P.2d at 803.

See also: 2 Larson, Workmen's Compensation Law, p. 220, § 75.23; 101 C.J.S. Workmen's Compensation § 1010c, p. 544; Witt v. Jackson, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961); Tate v. Superior Court, 213 Cal.App.2d 238, 28 Cal.Rptr. 548 (1963); Vegetable Oil Products Co. v. Superior Court, 213 Cal.App.2d 252, 28 Cal. Rptr. 555 (1963); Castro v. Fowler Equipment Co., 233 Cal.App.2d 416, 43 Cal.Rptr. 589 (1965).

4. (The existence of the Railroad Company's agreement to indemnify Adams would not affect this issue, but merely shifts the liability.)

In Witt v. Jackson, supra, the Supreme Court of California reasoned:

"A majority of jurisdictions that have passed on the question have held that a third party tortfeasor cannot assert the concurrent negligence of the employer as a defense, whether the employer, the employer's carrier, or the employee has brought the action against him. [Citations.] Most of these cases have reasoned that the employer should be able to get reimbursement from the third party tortfeasor despite his own concurrent negligence because the relevant Workmen's Compensation Act did not expressly preclude his recovery. Others have reasoned that the employer's rights against the third party are precisely the same as the rights of the employee; since the employee is not barred, neither is the employer.

"A few jurisdictions, however, notably Pennsylvania and North Carolina, have not allowed the negligent employer to get reimbursement from the third party tortfeasor. [Citations.] When an employee recovers a judgment against a third party tortfeasor, Pennsylvania allows the third party to secure contributions from the negligent employer, limited to the amount of compensation payments the employer has made to the employee. [Citations.] North Carolina, on the other hand, holds that the third party is entitled to have the judgment against him reduced by the amount of compensation paid to the injured employee if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee. [Citations.]" 17 Cal.Rptr. at 376, 366 P.2d at 648.

After the California court found the reasons supporting the North Carolina rule to be the most persuasive, the California court continued:

"In the Brown case, supra, [Brown v. Southern Ry. Co., 204 N.C. 668, 169 S.E. 419] it was stated that 'when the employee or his estate has been satisfied, and the employer seeks to recover the amount paid by him, from such third party, his hands ought not to have the blood of the dead or injured workman upon them, when he thus invokes the impartial powers and processes of the law.' (169 S.E. at p. 420). The Lovette case, supra, [Lovette v. Lloyd, 236 N.C. 663, 73 S.E.2d 886, 892] reiterated the same argument in more moderate language: 'It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer.'" 17 Cal.Rptr. at 377, 366 P.2d at 649.

In Witt v. Jackson, the California court referred to certain statutes, but found nothing in the California Labor Code "to suggest that the Legislature contemplated that a negligent employer could take advantage of the reimbursement remedies," that Labor Code Secs. 3852–3856 provide. That court quoted Sec. 3517 of the California Civil Code: "No one can take advantage of his own wrong." It then summarized its conclusion in the following statement:

"Thus, whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent negligence of the employer to defeat its right to reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee." 17 Cal. Rptr. at 377, 366 P.2d 649.

Respondents contend that the case of Halcyon Lines v. Haenn Ship, etc., Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) (sub nomine Baccile v. Halcyon Lines, D.C., 89 F.Supp. 765, 3 Cir., 187 F.2d 403), is controlling here. With this contention we do not agree. The third circuit court of appeals decided the case (187 F.2d 403), consistently with the holding in the Witt case. On reversing that opinion on other grounds, the U. S. Supreme Court expressly declined to decide the question before this court in connection with the Harbor Workers' Act. (342 U.S. at 286 n. 12, 72 S.Ct. 277.) See: Ryan Stevedoring

Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, which allowed reimbursement from a stevedoring company by the steamship company for damages the steamship company paid an injured employee of the stevedoring company even without a specific indemnity agreement.

It is our conclusion the trial court erred in application of the law in giving respondents judgment for the sum paid the injured workmen under the workmen's compensation law, and that portion of the judgment is reversed.

As to the issues presented by the railroad company's counterclaim, the trial court in conclusions of law held:

"That the Union Pacific Railroad Company have no recovery on the counterclaim based upon the Industry Track Contract and the Private Road Crossing Contract, and said agreements were inapplicable to support the counterclaim of the Union Pacific Railroad Company, and that they take nothing thereby, and judgment should be rendered thereon in favor of the plaintiffs."

This conclusion of law based on the following Findings of the trial court:

"6. That the accident which resulted in the injury to defendant Ferris C. Adams did not occur on or about the industry track constructed under the provisions of the Industry Track Contract entered into between defendant Union Pacific Railroad Company and the American Potato Company, Plaintiffs, but occurred on the track of the Defendant Union Pacific Railroad Company at a point easterly of the junction of the Industry track and the track of Union Pacific Railroad Company; and the portion of the industry track at the junction of said track with the track of the Union Pacific Railroad Company, and for a distance of 115 feet westerly of said junction, was constructed and owned by the Union Pacific Railroad Company, and that for an additional distance westerly, of 94 feet, the industry track was constructed at the expense of American Potato Company, Plaintiff, but was owned and maintained by the Union Pacific Railroad Company, Defendant, and that the accident occurred wholly within the right-of-way owned and maintained by the Union Pacific Railroad Company.

"7. That the accident which resulted in the injury to Defendant Ferris C. Adams, was not due in any way to the existence of the private road crossing constructed and maintained pursuant to the terms and conditions of the Contract for Private Road Crossing as entered into between the Union Pacific Railroad Company, Plaintiff and the American Potato Company, Defendant."

■■ In order to reach the determinations set out in the above Findings of Fact No. 6, the trial court of necessity limited the provisions of the indemnity agreement contained in the Industry Track Contract [5] to an accident which occurred in the precise area encompassed in this agreement, and disregarded the express provisions that the indemnity extends to claims for injury to employees, "while on or about the Track." This interpretation is too restrictive. The dominant purpose of the indemnity provision was to protect the railroad against increased liability arising from construction and use of the industry track, which was constructed for the benefit of and use by the Potato Company. Such agreements are

5. Section 9 of the agreement provides:
 " * * *
 "*The Industry [Potato Company] also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry*, its employees or agents, to the person or property of the parties hereto and *their employees and agents*, and to the person or property of any other person or corporation, *while on or about the Track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto * * *, it shall be borne equally by the parties at fault.*" (Emphasis supplied.)

not against public policy. Annot. 20 A.L.R. 2d 712, 713; 44 Am.Jur., Railroads, § 235, p. 455, note 4–5, 4.51. Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 20 A.L.R.2d 695 (9th cir. 1950); Buckeye Cotton Co. v. Louisville & N. R. Co., 24 F.2d 347 (6th cir. 1928). In Huck v. Chicago, St. Paul, Mpls. & Omaha Ry. Co., 5 Wis.2d 124, 92 N.W.2d 349 (1958), the Wisconsin court had before it the issue of the application of a contract clause identical with that portion of section 9 involved here, and held that a distance of 65 feet beyond the end of the track was within the ambit of the agreement. The court stated:

"* * * To effectuate fully the probable purpose of the indemnity paragraph, and avoid crippling it with arbitrary limitations having little relation to such purpose, the words 'about said track,' if applicable to the injured person, must be construed as extending to the obvious field of peril from readily foreseeable movement of cars on 'said track' ".

See also: Bullock v. Potashnick, 237 Mo. App. 665, 162 S.W.2d 607, 610 (1942). In the following cases: Hoops v. Phoenix Utilities Co., 116 Kan. 598, 227 P. 332 (Kan. 1924); Wise v. Central Dairy Co., 121 Kan. 258, 246 P. 501 (1926); Iott v. Mosby, 126 Kan. 294, 268 P. 109 (1928), the respective courts construed the word "about" to encompass more than a definite geographical boundary. In the case at bar, the railroad company was engaged in spotting cars for the benefit of the industry at the time the accident occurred, which work was in close conjunction with the use of the track encompassed by the agreement. While the trial court found the accident "did not occur on or about the industry track," it did not determine whether the accident occurred within the area intended by the parties by use of the phrase, "on or about the Track," having in mind the underlying purpose and object of the indemnity agreement. For this reason the judgment denying appellants' counterclaim must be reversed and the cause remanded to the trial court for determination of such issue.

■ Finally the trial court by its finding No. 7, determined that the accident was not due to the existence of the private roadway. However, the trial court did not make any specific findings as to the reason for the movement of the car wherein the injury occurred, i. e., whether it was moved to clear the roadway, or to straighten the load, or otherwise; nor did the trial court find whether the accident occurred as a result of the "existence" or "use" of the crossing. Until these factual issues are resolved, resolution of the question as to the applicability of the indemnity provision [6] of the Road Crossing Agreement would be premature.

The terms expressed in this agreement are clear. The Potato Company agrees to indemnify the Railroad Company from *any and all damages,* claims, etc., *of whatsoever nature,* whenever such injury was due *in any way* to the *existence* or *use* of the private crossing. Authorities discussing and applying such broad indemnity provisions in similar situations are: Southern Pacific Co. v. Morrison-Knudson Co., 216 Or. 398, 338 P.2d 665, at 670, 671, 674, 675 (1959); Jacksonville Terminal Company v. Railway Express Agency, Inc., 296 F.2d 256, 260 (5th cir. 1961), cert. den. 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18; Bedal v. Hallack & Howard Lumber Co., 226 F.2d 526, 539 (9th cir. 1955); Salamy v. New York Central System, 1 A.D.2d 27, 146

6. "10. Liability:

The Licensee [the Potato Company] shall further indemnify and hold harmless the Railroad Company from and against any and all damages, claims, demands, actions, cause of action, costs and expenses of whatsoever nature which may result from any injury to or the death of any person whomsoever, or from loss of or damage to property of any kind or nature, including damage to the roadbed, tracks, equipment or other property of the Railroad Company, *when such injury, death, loss or damage is due in any way to the existence of said private road crossing,* or to the construction, maintenance, repair, renewal *or use thereof,* * * *" (Emphasis supplied.)

N.Y.S.2d 814 (1955); Union Pacific R. R. Co. v. Ross Transfer Co., 64 Wash.2d 486, 392 P.2d 450 (1964); Boston & Maine R. Co. v. Hall, 284 F.2d 474, 476 (1st cir. 1960); Seabolt v. Penn. Ry. Co., 290 F.2d 296, 298 (3rd cir. 1961); Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. Co., 199 F.2d 725, 730–731 (8th cir. 1952); Metropolitan Packing Co. v. Gordon Herkenhoff & Associates, Inc., 66 N.M. 41, 341 P. 2d 460 (1959); 27 Am.Jur., Indemnity, § 13, p. 462.

The judgment is reversed and the cause remanded to the trial court for further findings of fact to resolve the issue as to the reason for the movement of the car and whether such movement resulting to the injury of Adams was due "in any way" to the "existence" or "use" of the crossing. If it deems it proper the trial court may reopen the cause for such additional evidence on issues herein discussed.

Costs to appellant.

TAYLOR, SMITH and SPEAR, JJ., concur.

McQUADE, J., concurs in the conclusion.