Argued and submitted April 4, reversed November 27,
petition for rehearing denied December 27, 1979

BOLDMAN,
*Plaintiff,*

*v.*

MT. HOOD CHEMICAL CORPORATION,
*Respondent/Cross-Appellant,*

*v.*

FMC CORPORATION,
*Appellant/Cross-Respondent.*

(No. 406-763, SC 25009)

602 P2d 1072

[121]

John E. Hart, of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause for appellant/cross-respondent. With him on the briefs were Gino G. Pieretti, Jr., and Ridgway K. Foley, Jr., Portland.

William L. Hallmark, of Jones, Lang, Klein, Wolf & Smith, Portland, argued the cause for respondent/cross-appellant. With him on the brief was William R. Miller, Jr., Portland.

Before Denecke, Chief Justice, and Holman, Howell, Lent and Linde, Justices.

DENECKE, C. J.

## DENECKE, C. J.

This is an action for indemnity by Mt. Hood Chemical Corporation as third-party plaintiff against FMC Corporation, third-party defendant. The action arises out of the death of one of FMC's employes. Worker's compensation benefits were paid to the spouse of the deceased employe. The personal representative subsequently brought an action against Mt. Hood, the supplier of a chemical which caused the employe's death. Mt. Hood filed a third-party complaint seeking indemnity from FMC. Mt. Hood subsequently settled the original claim. The indemnity claim was tried and submitted to a jury which returned a verdict for Mt. Hood. FMC appeals and we reverse.

FMC's employe was killed while using a chemical sold by Mt. Hood to clean grease and dirt from an enclosed cylinder within a 400-ton press. The chemical, 1, 1, 1 Trichloroethane, was manufactured by a third corporation. Mt. Hood purchased the chemical in 55-gallon drums, which bore extensive warnings concerning the dangers of the product. Mt. Hood painted over the drums, labeled the product "Formula 540" without revealing its chemical composition, and affixed less extensive warnings of the hazards associated with the product. FMC purchased the product and made it available for use by its employes. There was evidence to support a finding that FMC was negligent in failing adequately to warn or supervise its deceased employe regarding use of Formula 540 and in not controlling access to the product. Mt. Hood's liability for the employe's death rested upon its failure adequately to warn of the dangers associated with the use of Formula 540.

FMC's primary assignment of error is that its motion for a directed verdict should have been granted.

FMC, as an employer in compliance with Oregon's Workers' Compensation Law, "is relieved of all other liability for compensable injuries to his subject workmen, the workmen's beneficiaries and anyone other-

wise entitled to recover damages from the employer on account of such injuries * * *." ORS 656.018(1) (1975). Notwithstanding the provisions of ORS 656.018(1), we held in *U. S. Fidelity v. Kaiser Gypsum,* 273 Or 162, 539 P2d 1065 (1975), that a complying employer may be required to indemnify a third party held liable for the employe's injuries if the employer has breached an independent duty owed to the third party.[1] We did not elaborate in *Kaiser Gypsum* upon the situations which would give rise to such an independent duty.

The rationale of *Kaiser Gypsum* is that the employer is liable for breach of an independent duty owed third-party plaintiff's insured and not "on account of" the injuries or death of the worker. The facts in *Kaiser Gypsum* well illustrate facts which give rise to a special duty. *Kaiser Gypsum's* worker was injured when his hand was caught in the sprocket of a machine installed by the third-party plaintiff's insured. The machine was designed to be equipped with a guard which would prevent the worker's hand from coming in contact with the sprocket. At Kaiser's direction, the third-party plaintiff's insured installed the machine for initial testing without a guard. During the testing the worker was injured.

Kaiser's direction to the third-party plaintiff's insured to not install the guard created a duty on the part of Kaiser to use due care toward anyone who might be injured by the unprotected machine and this duty was owed to the installer.

In *Kaiser Gypsum* we discussed decisions from other jurisdictions which held that an independent duty of care existed which would support an indemnity action. In some of these cases an independent implied duty to use due care was found to arise because the employer had contracted to perform services for the party seeking indemnity. *See for example McDonnell*

---

[1] ORS 656.018(1)(a) was amended in 1977 to overturn the principle of *Kaiser Gypsum.* Oregon Laws 1977, ch 804, § (3)(a). The amended statute, however, is not applicable to this case.

*Aircraft Corp. v. Hartman-Hanks-Walsh Printing Co.,*
323 SW2d 788 (Mo 1959), which we noted as follows:

> "* * * [*McDonnell*] involved an employe who had
> received full compensation benefits suing the third
> party for injuries sustained while painting third
> party's plant. The third party sought indemnity on
> the ground that the employer had agreed to warn of
> the danger which ultimately injured the employe.
> The court found the employer had breached this inde-
> pendent duty to third party, thus resulting in the
> third party's liability to the employe for which the
> employer should indemnify despite the workmen's
> compensation statute's exclusive liability provision.
> * * *" 273 Or at 170-171.

In the present case FMC had not contracted to
perform services for Mt. Hood.

Other cases discussed in *Kaiser Gypsum* impose an
independent duty on the employer because the employ-
er became a bailee or lessee of the property:

> "In *Baugh v. Rogers,* 24 Cal2d 200, 148 P2d 633
> (1944), an employe was injured during the course of
> her employment when struck by an automobile driv-
> en by her employer but which was owned by another
> person. The employe sued the automobile owner
> under the state's owner-liability statute. A contract
> of bailment was created, the court held, when the
> owner gave permission to the employer to drive own-
> er's vehicle. The court found that benefits paid under
> California's Workmen Compensation Law would not
> bar the owner from being indemnified by the negli-
> gent employer when the owner's liability to the em-
> ploye arose from a breach of an independent duty of
> care owed by the employer as bailee to the owner of
> the automobile as bailor. *Baugh, supra,* at 640-42.
> Justice Traynor dissented, arguing that to allow in-
> demnity was contrary to public policy and the intent
> of workmen's compensation. * * *." (Footnote omit-
> ted.) 273 Or at 167-168.

One decision discussed in *Kaiser Gypsum* is very
much like the present case and third-party plaintiff
relies heavily upon it. In *Dole v. Dow Chemical Co.,* 30
NY2d 143, 331 NYS2d 382, 282 NE2d 288 (1972), *Dow*

[125]

manufactured and sold a poisonous fumigant to the employer who used it to fumigate a grain storage bin. Subsequently, the employer directed its employee Dole to clean the bin. Dole died from the residual fumes. Dole's widow sued Dow contending inadequate warnings were given. Dow sought indemnity from the employer contending the employer had negligently used its product. The employer relied upon the exclusive remedy provision of the Worker's Compensation Law. The New York Court of Appeals held the employer liable for indemnity because it breached an independent duty of care to *Dow* in the use of the fumigant. The court did not explain why the employer owed an independent duty to Dow.

The decision has been sharply criticized:

> "The 'independent duty' in *Dole* could not very well be held to be based on contract, although there was a contract between the parties. The contract was simply one of sale—in this instance, of a poisonous fumigant. Clearly certain independent obligations run with the sale from the manufacturer to the buyer. But it seems unlikely that any court would be prepared to hold that independent *contractual* obligation runs from the buyer to the manufacturer. To do this a court would have to announce the following doctrine: 'Whenever a buyer purchases an article from a manufacturer, the buyer assumes an independent *contractual* obligation to the manufacturer not to use the article in such a way as to bring liability upon the manufacturer.'" 2A Larson, Workmen's Compensation Law, § 76.44, 404-405 (1976).

Courts in other jurisdictions have not followed *Dole v. Dow Chemical, supra.* In *Santisteven v. Dow Chemical Company,* 506 F2d 1216 (9th Cir 1974), Dow did not fare as well as it did before the New York court. There, an employe of Kennecott Copper was injured while using caustic soda manufactured by Dow. Kennecott paid workers' compensation to the employe. The employe brought an action against Dow based upon alleged mislabeling. Dow sought indemnity claiming the employer failed to properly instruct its employe

and failed to provide a safe place to work. The employer contended Dow was the greater transgressor and not entitled to indemnity. The trial court held against Dow and the United States Court of Appeals affirmed.

The court stated:

"Nevertheless, Dow strenuously argues that Kennecott does have an independent duty to avoid subjecting Dow to the risk of tort liability. That, however, turns indemnity on its head.

"Dow's liability arises because of a breach of a duty it owes to users of its products—in this instance, a worker. Assumably, Kennecott has also breached a duty owed to the same worker by its negligence. Under Dow's theory, the whole burden of loss would be shifted whenever the employer was negligent in any way because the employer would have failed in its duty to extricate the third party from possible liability. Yet indemnity does not work in that way. In the absence of a specific legal relationshhip (e. g., master-servant) or contract-type obligation, indemnity is only proper when it is more *just* to shift the burden of loss—that is, usually when the indemnitor is somehow more at fault. Indeed, the quasi-contract cases where promises to indemnify are implied rest on the same foundation; underlying the stated and largely fictional contract rationale is the feeling that it is just to shift financial responsibility. What triggers the indemnity, then, is not any abstract duty owed the third party employee; indemnity is allowed because the employer's transgression is more serious than the third party's. But if it is in reality a liability of employer to employee that supports indemnification, that is exactly the type of liability which the Nevada Act extinguishes." (Footnotes omitted.) 506 F2d at 1219-1220.

*Santisteven v. Dow Chemical Company, supra,* was a diversity case and Nevada law was applicable. Subsequent to *Santisteven* the Nevada Supreme Court in *Outboard Marine Corp. v. Schupbach,* 93 Nev 158, 561 P2d 450 (1977), reached a result similar to that reached by the United States Court of Appeals in

[127]

*Santisteven.* The facts in the Nevada case were that Outboard sold an electric cart to a chemical manufacturing firm. A spark from the cart caused an explosion which killed and injured employes of the chemical company. The injured employes and dependents of the deceased workers received compensation from the chemical company and they also brought actions against Outboard. Outboard, in turn, sought indemnification from the employer. A jury found for Outboard against the chemical company, finding Outboard was 25 per cent at fault and the chemical company 75 per cent.

The Nevada Supreme Court reversed a judgment for Outboard against the chemical company:

"* * * [I]t is certain that there exists no room for implied indemnity, absent an independent duty owing from the employer (Stauffer-Montrose) to the third party (Outboard). Cf. United States Fidelity & Guaranty Co. v. Kaiser Gypsum Co. Inc., 273 Or 162, 539 P2d 1065. Such an independent duty does not arise simply from the fact that the employers purchased a product. Santisteven v. Dow Chemical Company, supra." 93 Nev at 165.

A United States district judge recently wrote a persuasive opinion holding that a supplier such as Mt. Hood Chemical has no rights to indemnification from an employer:

"* * * The implied obligation to indemnify must rest on a particular duty the employer who has purchased the machine owes to the manufacturer, distinct from the duty he owes to his employees. * * * Clearly, the mere fact of a contractual relationship between the would-be indemnitee and indemnitor does not necessarily give rise to an implied obligation to indemnify. * * *

"Star Chopper's indemnity claims based on Third Party Defendant's alleged failure to warn its employees of the hazards of the machine and any alteration or misuse following delivery are easily dismissed. * * * The employer's duty of proper use and care of the machine runs solely to its employees. Liability for breach of that duty has been satisfied by

payment of a compensation award. The employer does not have an independent duty running to the manufacturer to use the machinery so as to avoid imposition of liability upon the manufacturer. * * *" *Roy v. Star Chopper Co., Inc.,* 442 F Supp 1010, 1018-1019 (D RI 1977), *aff'd* 584 F2d 1124 (1st Cir 1978).

A division of the Washington Court of Appeals considered this problem in light of our decision in *U. S. Fidelity v. Kaiser Gypsum, supra.* In *Olch v. Pacific Press & Shear Co.,* 19 Wash App 89, 573 P2d 1355 (1978), the employe received workers' compensation benefits from his employer. He also sued the manufacturer and seller of the press. The manufacturer and seller sought indemnity from the employer. A majority of the Court of Appeals held they were not entitled to indemnification and stated:

> "The third-party plaintiffs rely upon cases holding a contract of indemnification may be implied where an employer is 'testing' a third party's machine (*United States Fidelity & Guar. Co. v. Kaiser Gypsum Co.,* 273 Ore. 162, 539 P.2d 1065 (1975)). * * * A comparable special relationship or independent duty has not been shown to exist here. Independent duties from the buyer to the seller should not be implied to exist where the parties have not contracted for such duties expressly. * * *" 19 Wash App at 94.

We hold that there was no independent duty to Mt. Hood, the seller, owed by FMC, the employer and buyer, to use due care in the use of the product sold by Mt. Hood.

Mt. Hood makes a separate argument that even though we hold Mt. Hood is not entitled to indemnity from FMC, Mt. Hood is entitled to some relief against FMC. As stated, workers' compensation benefits were paid by FMC to the widow. ORS 656.593 provides that "the proceeds of any damages recovered" from a third person by the widow of a deceased worker shall be subject to the lien of an employer who has paid workers' compensation benefits to the widow. Mt. Hood contends that it would be inequitable for FMC to have such a lien because FMC's culpability was a cause of

the employe's death. To preserve Mt. Hood's right to assert this contention the settlement agreement between the widow and Mt. Hood, which FMC approved, provides that a certain sum paid by Mt. Hood would be set aside as the agreed upon amount of workers' compensation paid by FMC. If Mt. Hood prevailed in its contention that FMC should not have a lien, this sum would be repaid to Mt. Hood; if FMC prevailed, the sum would go to FMC.

California, North Carolina, Idaho and several federal district courts have adopted a rule similar to that advocated by Mt. Hood. *Witt v. Jackson,* 57 Cal2d 57, 17 Cal Rptr 369, 366 P2d 641 (1961); *Brown v. Southern Ry. Co.,* 204 NC 668, 169 SE 419 (1933); *Liberty Mutual Insurance Company v. Adams,* 91 Idaho 151, 417 P2d 417, 420-423 (1966). According to *Stroud v. Dorr-Oliver, Inc.,* 112 Ariz 403, 542 P2d 1102, 1108 (1976), 23 jurisdictions hold to the contrary. See cases collected at 2A Larson, *supra,* at §§ 75.22 and 75.23.

We hold that pursuant to ORS 656.593, FMC is entitled to a lien for its compensation payments to the widow. Whether FMC was culpable in causing the death is irrelevant.

ORS 656.593 provides:

"(1) If the worker or his beneficiaries elect to recover damages from the employer or third person, notice of such election shall be given the paying agency by personal service or by registered or certified mail. The paying agency likewise shall be given notice of the name of the court in which such action is brought, and a return showing service of such notice on the paying agency shall be filed with the clerk of the court but shall not be a part of the record except to give notice to the defendant of the lien of the paying agency, as provided in this section. The proceeds of any damages recovered from an employer or third person by the worker or beneficiaries shall be subject to a lien of the paying agency for its share of the

proceeds as set forth in this section and the total proceeds shall be distributed as follows:

"(a)   Costs and attorney fees incurred shall be paid, such attorney fees in no event to exceed the advisory schedule of fees established by the board for such actions.

"(b)   The worker or his beneficiaries shall receive at least 25 percent of the balance of such recovery.

"(c)   The paying agency shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation, first aid or other medical, surgical or hospital service, and for the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim under ORS 656.001 to 656.794 exclusive of any compensation which may become payable under ORS 656.273 or 656.278.

"(d)   The balance of the recovery shall be paid to the worker or his beneficiaries forthwith. Any conflict as to the amount of the balance which may be retained by the paying agency shall be resolved by the board.

"(2)   The amount retained by the worker or his beneficiaries shall be in addition to the compensation or other benefits to which such worker or beneficiaries are entitled under ORS 656.001 to 656.794.

"(3)   A claimant may settle any third party case with the approval of the paying agency, in which event the paying agency is authorized to accept such a share of the proceeds as may be just and proper and the worker or his beneficiaries shall receive the amount to which he would be entitled for a recovery under subsections (1) and (2) of this section. Any conflict as to what may be a just and proper distribution shall be resolved by the board [Workers' Compensation Board]."

The legislature made no distinction between an employer whose fault contributed to the death or injury and an employer who was free of fault. The statute grants both a lien. Mt. Hood would have us graft onto that statute a substantial exception; that is, an employer is entitled to a lien only when the

employer was not at fault. We see no justification for so doing.

Subsection (3) provides that in the case of a settlement, the paying agency is entitled to a share in the settlement "as may be just and proper." We are of the opinion that this refers to "just and proper" as between the paying agency and the injured employe or the dependent of the deceased employe. There is no reason the legislature would take into account the employer's culpability in case of a settlement between the injured employe or dependents of a deceased employe and a third party but not take culpability into account if the case against the third party goes to judgment.

Reversed.