## STATE OF OREGON,
*Appellant,*

*v.*

## NORTHWESTERN PACIFIC
## INDEMNITY COMPANY,
*Respondent.*

(No. A7812-19509L, CA 14806)

611 P2d 322

Argued and submitted January 14, 1980.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs

were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

E. Pennock Gheen, Portland, argued the cause for respondent. With him on the brief was Hershiser, Mitchell, Mowery & Davis, Portland.

Before Joseph, Presiding Judge, and Richardson and Gillette,* Judges.

GILLETTE, J.

*Gillette, J., *vice* Lee, J., deceased.

## GILLETTE, J.

The issue in this case is whether Northwestern Pacific Indemnity Company (Northwestern) had a duty to defend its insured, the state of Oregon. The trial court sustained Northwestern's demurrer to the state's second amended complaint, holding that the complaint did not state a cause of action and that Northwestern had no duty to defend. ORS 16.260(6), *infra.* Judgment was entered on the demurrer,[1] and the state appeals. We affirm.

This action follows two prior actions. In 1973, Clarence Berg, the state's employee, was injured when the highway "roller" which he was operating turned over. Berg sued the manufacturer of the roller, Ingram Manufacturing Company (Ingram), alleging that the roller was defective. Ingram tendered the defense of this action to the state, which rejected the tender. Judgment was rendered for Berg.

Ingram then brought an action for indemnity against the state. The state tendered the defense to its insurer, Northwestern, which refused to defend. The state successfully defended the action but incurred costs and expenses.

The state then initiated the instant action against Northwestern, seeking to recover the state's costs in defending the action brought against it by Ingram. Northwestern demurred to the state's complaint, contending that it was clear from the face of the complaint that Northwestern had no duty to defend. The trial court agreed and sustained the demurrer.

On appeal, we also agree that Northwestern had no duty to defend its insured, the state, against the action brought by Ingram.

---

[1] In sustaining the demurrer, the trial court did not grant the state further leave to amend its complaint. *See* ORS 16.380. The court had upheld analogous demurrers to the state's original and first amended complaints.

"Since this case is before us on appeal from the sustaining of a demurrer, we must assume the truth of all plaintiffs well pleaded allegations and any facts that might conceivably be adduced as proof of such allegations." *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965); *Seal v. Polehn,* 284 Or 259, 263, 586 P2d 345 (1978); *see also Dykeman v. State,* 39 Or App 629, 631, 593 P2d 1183 (1979).

The state's complaint incorporated both the insurance policy issued to it by Northwestern and the complaint filed against it by Ingram. Northwestern's duty to defend is determined by comparing the terms of the insurance policy it issued to the state with the allegations in Ingram's complaint against the state. *Farris v. U. S. Fidelity & Guaranty,* 273 Or 628, 635, 542 P2d 1031 (1975); *Ferguson v. Birmingham Fire Ins. Co.,* 254 Or 496, 505, 460 P2d 342 (1969).

In the insurance policy, Northwestern agreed to:
"Pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
    A.  bodily injury or
    B.  property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient * * *."

In claiming that it has no duty to defend, Northwestern relies on the following policy exclusions:
"Exclusions
"This insurance does not apply:
"* * * * *

"(g)  to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"(h)   to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to liability assumed by the insured under an incidental contract;

"* * * * *."

The state admits that if its employe, Berg, brought an action against it arising out of the roller accident, Northwestern would not have a duty to defend due to the policy exclusions. The state also concedes that, if the claim by Ingram against the state had been founded upon common law indemnity, "that is, upon a claim that both [Ingram and the state] each owed a duty to the employe but, as between the two, the [state] should bear the loss, there would be no duty to defend * * *."

However, despite these concessions and the policy exclusions, the state argues that Northwestern had a duty to defend because Ingram's complaint alleged that the state had breached an "independent duty" owed to Ingram. *U.S. Fidelity v. Kaiser Gypsum,* 273 Or 162, 177, 539 P2d 1065 (1975), adopted a rule allowing

" * * * a third party to recover indemnity from an employer when the injury to the employee for which the third party was held liable resulted from the breach of an independent duty owed to the third party by the employer."

Ingram's complaint against the state alleged that,

"Prior to the accident involving Clarence Berg, defendant [state] through its employees, was aware that the engine on the roller was operating erratically and that Mr. Berg had complained of such engine operation prior to the accident.

"Despite the knowledge of the defendant and its employees and despite the complaints of Mr. Berg, defendant required Mr. Berg to operate the roller in a hazardous location without giving Mr. Berg effective and adequate training in the rolling operation and without taking effective and appropriate corrective steps to remedy the engine operating difficulties.

"Defendant owed plaintiff an independent duty to correct the evident operating difficulties with its equipment before using the equipment on a roadway and also to provide proper and appropriate training to its operators based on the defendant's knowledge and experience with identical and similar types of equipment and working conditions.

"Plaintiff's damage occured due to the breach of the independent obligations owed by defendant to plaintiff as set forth herein."

In essence, the "independent duty" claimed by Ingram and allegedly breached by the state was the duty to correct the operating difficulties with the roller and to provide adequate training to the state's employe, Berg.

Despite the legal conclusions in the complaint, these are not allegations of an "independent duty" owed by the state to Ingram.

" "* * * The implied obligation to indemnify must rest on a particular duty the employer who has purchased the machine owes to the manufacturer, distinct from the duty he owes to his employees. * * * Clearly, the mere fact of a contractual relationship between the would-be indemnitee and indemnitor does not necessarily give rise to an implied obligation to indemnify. * * *

"* * * The employer's duty of proper use and care of the machine runs solely to its employees. Liability for breach of that duty has been satisfied by payment of a compensation award. The employer does not have an independent duty running to the manufacturer to use the machinery so as to avoid imposition of liability upon the manufacturer. * * *' "

*Roy v. Star Chopper Co., Inc.,* 442 F Supp 1010, 1018-1019 (D RI 1977), *aff'd* 584 F2d 1124 (1st Cir 1978), quoted with approval in *Boldman v. Mt. Hood Chemical Corporation,* 288 Or 121, 128-129, 602 P2d 1072 (1979).[2]

---

[2] In *U.S. Fidelity v. Kaiser Gypsum, supra,*

"* * * Kaiser Gypsum's worker was injured when his hand was caught in the sprocket of a machine installed by the third-party

The "independent duty" alleged by Ingram is, in fact, not an "independent duty." The duty is that of proper use and care of the roller and of proper training for the state's employe. As *Boldman* holds, these duties do not extend between the employer and the manufacturer. Rather, they run solely to the employe.

The allegation in Ingram's complaint that the duty was "independent," does not assist the state here.

"The allegation * * * is merely a conclusion and states no fact; it was therefore not admitted by the demurrer and will not be considered by us. *Coblentz v. State Ind. Acc. Comm.,* 203 Or 258, 262-263, 279 P2d 503 (1955)." *Messmer v. Carter/Bonded Credit Co.,* 282 Or 323, 326, 578 P2d 788 (1978).

The state did not owe an "independent duty" to Ingram. Therefore, Northwestern had no duty to defend its insured, the state, against Ingram's complaint.

Affirmed.

plaintiff's insured. The machine was designed to be equipped with a guard which would prevent the worker's hand from coming in contact with the sprocket. At Kaiser's direction, the third-party plaintiff's insured installed the machine for initial testing without a guard. During the testing the worker was injured.

"Kaiser's direction to the third-party plaintiff's insured to not install the guard created a duty on the part of Kaiser to use due care toward anyone who might be injured by the unprotected machine and this duty was owed to the installer."

*Boldman v. Mt. Hood Chemical Corporation, supra,* 288 Or at 124. *Boldman* quotes the following description of the holding in *Kaiser Gypsum:*

" 'The third-party plaintiffs rely upon cases holding a contract of indemnification may be implied where an employer is "testing" a third-party's machine (*United States Fidelity & Guar. Co. v. Kaiser Gypsum Co.,* 273 Or 162, 539 P2d 1065 (1975)). * * * A comparable special relationship or independent duty has not been shown to exist here. Independent duties from the buyer to the seller should not be implied to exist where the parties have not contracted for such duties expressly. * * *' [*Olch v. Pacific Press & Shear Co.,* 19 Wash App 89, at 94, 573 P2d 1355 (1978)]." 288 Or at 129.