678 P.2d 33

Larry L. SCHNEIDER,
Plaintiff-Appellant,

v.

FARMERS MERCHANT, INC., an Idaho corporation, Defendant-Respondent.

No. 14390.

Supreme Court of Idaho.

Dec. 29, 1983.

Rehearing Denied March 28, 1984.

David W. Cantrill, and Hollis A. Mercer, Cantrill & Skinner, Boise, for plaintiff-appellant.

Michael Ramsden, Quane, Smith, Howard & Hull, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

In this case we decide the total damages that are available to an injured employee who received workmen's compensation benefits from his employer, and later recovered damages against a third party in a separate negligence suit. We also decide the proper apportionment of these damages as between the employer and third party.

On May 13, 1977, Larry Schneider suffered an injury while employed as a truck driver for Nelsons' Inc., (hereinafter referred to as Nelson). The injury occurred while Schneider was loading grain into his truck with an auger owned and supplied by Farmers Merchant, Inc. (Farmers). Argonaut Insurance Company, Nelson's insurer, paid Schneider workmen's compensation benefits totaling $5,638.52. A compensation agreement to this effect was entered into on August 18, 1977, and approved by the Industrial Commission on August 25, 1977.

On April 19, 1979, Schneider filed a suit against Farmers, alleging that as a result of Farmers' failure to supply a chain guard and other protective devices on the grain auger, plaintiff's left thumb was severed from his hand. Prior to trial, Farmers' insurer, Aetna Insurance Company, entered into an agreement with Nelson's insurer, Argonaut Insurance Company. Pursuant to this agreement, Aetna agreed to pay Argonaut $3,000.00, if Argonaut would release and discharge Farmers, and its insurer Aetna, from any demand, claim or liability based on the May 13, 1977 accident.[1]

The jury assessed Schneider's damages at $20,000, attributing sixty percent of the fault to Farmers and forty percent to Schneider. Schneider made alternative motions for a new trial or judgment notwithstanding the verdict, contending the jury reduced his award contrary to the express jury instructions. These motions were denied.

Farmers made a motion to reduce the judgment by $5,638.52, the amount of workmen's compensation benefits Schneider had received. Farmers contended it had discharged Nelson's subrogation rights in this amount by virtue of the release agreement. This motion was initially denied until Farmers supplied the court with sufficient evidence to support this request. Upon receiving the evidence, the court held that Farmers was entitled to a reduction in

---

1. The release agreement provided in pertinent part:

"That Argonaut Ins. Co. (Assured Nelson's, Inc., claimant Larry Schneider) for and in consideration of the sum of Three thousand and no/100 Dollars, ($3,000.00), the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and forever discharge Farmers Merchant, Inc. and Aetna Cravens & Dargan his successors and assigns, and/or his, her, their heirs, executors, and administrators, and also any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above-named, may be jointly or severally liable to the Undersigned, of and from any and all, and all manner of actions, causes of action, rights, suits, covenants, contracts, agreements, judgments, claims, and demands whatsoever in law or equity, including claims for contribution, arising from and by reason of any and all KNOWN AND UNKNOWN, FORESEEN AND UNFORESEEN bodily and personal injuries or death, damage to property, and the consequences thereof, which heretofore have been, and which hereafter may be sustained by the Undersigned or by any and all persons, associations and corporations, whether herein named or referred to or not, and especially from all liability arising out of an occurrence that happened on or about the 13th day of May, 1978, at or near Blackfoot, Idaho."

the judgment by the amount of workmen's compensation benefits paid, "to prevent a double recovery by plaintiff." Therefore, the court reduced Schneider's total award, $20,000.00, by the amount representing plaintiff's negligence, forty percent, and by the amount of workmen's compensation benefits he had received, $5,638.52, resulting in a judgment of $6,361.48.

Schneider appeals from this judgment, claiming first, that the trial court erroneously reduced his judgment by the amount of workmen's compensation benefits paid, without first determining the negligence of the employer. Appellant further asserts that the trial court erroneously reduced his judgment in order to prevent a double recovery. Finally, appellant contends that the trial court erroneously denied his motions for a new trial or judgment notwithstanding the verdict. We disagree on all counts.

I.C. § 72–209, and former I.C. § 72–223, provide the framework for this analysis. I.C. § 72–209 establishes the employer's liability under the Workmen's Compensation Act. Under this provision, the employer's liability is exclusive, subject only to I.C. § 72–223.[2] We previously held in *Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979), that these remedies are cumulative. "There appears no

question but that an injured employee may receive workmen's compensation benefits and thereafter bring a negligence action against a third party tortfeasor who was a nonemployer. I.C. § 7–223." 100 Idaho at 603, 603 P.2d at 169. (Citations omitted.)

■ If an employee brings a suit against a third party in addition to receiving workmen's compensation benefits, this Court has established a system of apportioning the employee's damages between the employer and third party. The focus of this Court in apportionment is two-fold: (1) to achieve an equitable distribution of liability for the employee's injuries as between the employer and the third party, based on the facts of each case, and (2) to prevent the overcompensation of an employee, *i.e.*, to prevent the employee from retaining both the workmen's compensation benefits and the full tort recovery.

Our system of apportionment has foundation in I.C. § 72–223(3). We summarized our interpretation of this section in *Tucker*, 100 Idaho at 603, 603 P.2d at 169.

"I.C. § 72–223 provides that an employer may be subrogated to the rights of the employee to the extent that the employee has received compensation benefits. In *Liberty Mutual Ins. Co. v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966), however,

---

**2.** Appellant brought suit under former I.C. § 72–223 which provided as follows:

"**72–223. Third party liability.**—(1) The right to compensation under this law shall not be affected by the fact that the injury, occupational disease or death is caused under circumstances creating in some person other than the employer a legal liability to pay damages therefor, such person so liable being referred to as the third party. Such third party shall include those employers described in section 72–216, having under them contractors or subcontractors who have in fact complied with the provisions of section 72–301.

"(2) Action may be instituted against such third party by the employee, or in event compensation has been claimed and awarded, by the employee and employer jointly, in the employee's name, or, if the employee refuses to participate in such action, by the employer in the employee's name.

"(3) If compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor,

shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability.

"(4) On any recovery by the employee against a third party, the employer shall pay or have deducted from his subrogated portion thereof, a proportionate share of the costs and attorney's fees incurred by the employee in obtaining such recovery.

"(5) If death results from the injury or occupational disease and if the employee leaves no dependents entitled to benefits under this law, the surety shall have a right of action against the third party for recovery of income benefits, reasonable expenses of medical and related services and burial expense actually paid by the surety and for recovery of amounts paid into the industrial special indemnity fund pursuant to section 72–420, and such right of action shall be in addition to any cause of action of the heirs or personal representatives of the deceased."

the right of an employer to such subrogation and its ability to obtain reimbursement from the employee was limited. The Court held that when an employer's negligence, together with the negligence of a third party nonemployer tortfeasor, concurrently contributed to the injury of an employee, neither the employer not [sic] his surety may obtain reimbursement for workmen's compensation benefits from an employee who recovers damages from a third party tortfeasor."

The reimbursement of workmen's compensation benefits to a negligent employer has been denied largely because it is contrary to the policy of the law for an employer (or his insurer) to profit from his own wrong. *McDrummmond v. Montgomery Elevator Co.*, 97 Idaho 679, 551 P.2d 966 (1976); *Liberty Mutual Ins. Co. v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966); *Associated Construction & Engineering Co. v. Workers Compensation Appeals Bd.*, 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978); *Witt v. Jackson*, 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641, 649 (1961).

Based on our focus in apportionment, and on the foundation of § 72–223, the system of apportionment generally works as follows. In those situations where the employer is not negligent, the employer is entitled to subrogate to the employee's recovery against a third party, and thus obtain a reimbursement of the workmen's compensation benefits he paid. Conversely, in those situations where the employer is negligent, the employer is denied this reimbursement and the third party is entitled to a credit against his judgment in the amount of the workmen's compensation benefits the employer paid. *Tucker*, 100 Idaho at 603, 603 P.2d at 169. Thus, the employee's award is reduced by the amount of workmen's compensation he received. In either event, the employee does not retain both the workmen's compensation benefits and the full tort recovery. *Tucker*, 100 Idaho at 603, 603 P.2d at 169; *Shields v. Wyeth Laboratories, Inc.*, 95 Idaho 572, 513 P.2d 404 (1973); *Associated Construction*, 150 Cal.Rptr. at 890, 587 P.2d at 686; *Witt*, 17 Cal.Rptr. at 378, 366 P.2d at 650.

■ Typically, the employer or the third party seeks to determine whether the employer was negligent, each hoping to reduce his liability. In such cases, the negligence of the employer must be determined. In view of the release agreement in this case, however, the determination of the employer's negligence is unnecessary. As previously noted, Farmers paid $3,000.00 in consideration for Nelson's release of any claim Nelson may have had, based on the May 13, 1977 accident. Nelson's subrogation rights were extinguished, and by virtue of Farmers' payment to Nelson, Farmers became subrogated to Nelson's right of reimbursement. *May Trucking Co. v. International Harvester Co.*, 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975); *Williams v. Johnston*, 92 Idaho 292, 298, 442 P.2d 178, 184 (1968). Thus, in the event Nelson's negligence was litigated, and Nelson was found not negligent, Farmers held Nelson's right to be reimbursed for the workmen's compensation benefits paid. Conversely, in the event Nelson was found negligent, Farmers retained its right to receive a credit towards his judgment, in the amount of the workmen's compensation benefits paid. In either event, Farmers was entitled to the $5,638.52, either by way of reimbursement or by a credit. Therefore, in the posture of this case, the determination of the employer's negligence was unnecessary.

The plaintiff relies on *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980), for the proposition that the employer's negligence must be determined. In *Pocatello*, we held that "[i]n order for the doctrine of collateral estoppel to apply the issue in question must have *actually* been litigated and resolved in the prior suit." *Id.* at 786, 621 P.2d at 402. (Emphasis in original.) Because *Pocatello* was decided on the basis of collateral estoppel requirements, its holding is inapposite to the issues now before this Court.

■ Appellant next asserts that his judgment may not be reduced by the amount of

workmen's compensation benefits in order to prevent a double recovery. Our holding in *Shields v. Wyeth*, 95 Idaho 572, 513 P.2d 404 (1973), instructs otherwise. In *Shields*, we discussed whether the employer or its surety was entitled to a credit, in lieu of subrogation, where the employee settled a third-party claim before the permanent total disability award was issued. We cited with approval the following excerpt from Larson's treatise on Workmen's Compensation.

"It is equally elementary that the claimant should not be allowed to keep the entire amount both of his compensation award and of his common-law damage recovery ....

"It is true that in many jurisdictions the employee may collect both compensation and damages, as against the defendant's objection of double recovery, since double recovery is prevented by the employee's obligation to pay over the amount of compensation to the employer or insurer. But it is not true in any jurisdiction having a third-party statute that the employee may keep both recoveries."

95 Idaho at 573–574, 513 P.2d at 405–406. In *Shields*, we granted the employer a credit against his liability in the amount of the third-party settlement, based on the following rationale.

"We can find nothing in the Idaho Workmen's Compensation Laws in effect at the time this suit was brought to indicate that the legislature contemplated allowing an injured workman a 'double recovery' in situations where a third party was liable to pay for the damages sustained by the injured workman and a settlement was effected before a compensation award was made."

95 Idaho at 574, 513 P.2d at 406.

We affirm the reasoning of *Shields*, and hold that it was not erroneous in this case for the trial court to reduce Schneider's award by the amount of the workmen's compensation benefits. This result comports with our focus in apportionment decisions discussed above. First, the apportionment of damages was equitable in this case. A reimbursement did not inure to the benefit of a negligent employer. The employer and third party arrived at a mutual agreement of their respective liability by virtue of their release agreement. This agreement relieved the court from litigating the issue of the employer's negligence, without prejudicing Schneider's recovery. Second, to allow Schneider to retain both the workmen's compensation benefits and the full tort recovery, would be overcompensatory, and contrary to our holding in *Shields*.

Finally, Schneider contends that the trial court erroneously denied his motion for a new trial or judgment notwithstanding the verdict because the jury's assessment of damages was grossly inadequate. We have held that

"this Court is firmly committed to the rule that a trial court possesses a discretion to be wisely exercised in *granting or refusing to grant* a new trial and that such discretion will not be disturbed on appeal unless it clearly appears to have been exercised unwisely and to have been manifestly abused."

*Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967) (emphasis in original); *cited with approval in Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), and *Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972).

Furthermore, in *Dinneen*, 100 Idaho at 626, 603 P.2d 575 we held as follows:

"While we must review the evidence, we are not in a position to 'weigh' it as a trial court can. Rather, the power of this Court over excessive or inadequate damages exists only when the facts are such that the excess or inadequacy appears as a matter of law. *Blaine v. Byers, supra; Mendenhall v. MacGregor Triangle Co.*, [83 Idaho 145, 358 P.2d 860 (1961)] citing *Bond v. United Railroads*, 159 Cal. 270, 113 P. 366 (1911)."

The damages here are not inadequate as a matter of law, nor has Schneider demonstrated that the trial court's discretion was exercised unwisely or manifestly abused. Therefore, we affirm the trial court's denial of Schneider's motions for a new trial or a judgment notwithstanding the verdict.

We affirm on all counts.

Costs to respondent.

No attorney fees on appeal.

BAKES, J., concurs.

BISTLINE, Justice, concurring in the Court's judgment and specially concurring.

I concur in the Court's judgment under the principle of *stare decisis* in view of the Court's decision in *Tucker v. Union Oil Co.*, 100 Idaho 590, 603 P.2d 156 (1979)—a decision from which I vigorously dissented. I hold to the views set forth in my *Tucker* dissent and reiterate them in part today for the benefit of the bench and bar:

"While I concur with the major holdings of the Court's [*Tucker*] opinion, I am persuaded that this Court should not blindly accept the unfortunate 'no double recovery' language of *Witt* as a basis for a new rule of law that an injured employee's damages awarded against a third-party tortfeasor must in all instances be reduced by the amount of workmen's compensation he has received. The Court did not do so in *Liberty Mutual Insurance Company v. Adams*, 91 Idaho 151, 417 P.2d 417 (1966), where *Witt* was first considered and applied, but on the contrary did allow the employee a 'double recovery'—a loosely used term which is quite at odds with reality.

"The sole issue in *Liberty Mutual* was whether a negligent employer, whose negligence along with that of a third party produced the injury, could obtain from an injured employee reimbursement of workmen's compensation benefits paid, the employee having recovered from the third party in a negligence action for damages. The Court answered in the negative, holding that the negligent employer and its surety Liberty Mutual could not so recover. The so-called 'double recovery' remained with the injured employee.

"While it is correct that the Court in *Liberty Mutual* relied upon *Witt* for the proposition stated at page 156 of 91 Idaho, at page 422 of 417 P.2d,[2] the Court *did not* at all adopt, approve, or even mention the further statement of *Witt* that a reduction of the employee's damages awarded in a suit against the third-party tortfeasor must

be made so as to avoid the allowance of a double recovery. *Witt*, 17 Cal.Rptr. at 378, 366 P.2d at 650. Moreover, on many readings of *Witt* I remain unable to find in that opinion anything whatever substantiating that statement. It was a mere unreasoned gratuity which the court apparently made in distinguishing the facts in *Witt* from the facts in *Baugh v. Rogers*, 24 Cal.2d 200, 148 P.2d 633 (1944), discussed in *Witt*, 17 Cal.Rptr. at 377–378, 366 P.2d at 649–50.

. . . .

"Recognition must be given to the fact that the statutory scheme since its enactment in 1917 gave the employer subrogation rights. This, however, has nothing to do with the question of whether an employee who obtains industrial accident insurance compensation and thereafter successfully maintains a negligence action against a third-party tortfeasor is somehow gaining a 'double recovery.' It illustrates only a disposition on the part of the legislature to favor the employer (in reality the employer's surety) by affording an opportunity to come out harmless—notwithstanding that the injured employee's claim for compensation benefits may have been vigorously resisted. It becomes necessary to pause and reflect upon what had happened in 1917.

"The enactment of Idaho's Workmen's Compensation Law took away the right of a workman in Idaho to seek damages for injuries occasioned by the negligence of his employer, and in return he was provided specific compensation, which until recently has been totally inadequate, and now is just barely adequate. The legislative scheme was to accomplish this through a 'no-fault' insurance program, where the compensation awards would be made by insurance companies who would in turn accept premiums in return for assuming the risks of loss. The legislature, if it considered that the employee might receive from his employer some sum of money with which to purchase such workmen's insurance and pay the premium, instead directed the employer to procure the insurance and pay the premium. The working man, having involuntarily lost his common law cause of action for injury, became the beneficiary of these policies of industrial

accident insurance. [Footnote omitted.] The legislature perceived that it was not only wise that the working man not be entrusted with purchasing his own industrial compensation coverage, but that he should pay back what benefits he received if he was able to effect a recovery from a third-party tortfeasor. This payback was never said to be, however, on the theory that a working man should not be able to collect both insurance benefits and damages occasioned him by the third-party tortfeasor—but on the more readily acceptable and less obvious theory, well known in the insurance industry, that an insurance company which has paid benefits always wants to be subrogated to the employee's rights to the extent of payments made. The Idaho legislature, as with others, so arranged it. In no instance did the legislatures of any of the states including Idaho consider that such subrogation provisions indiscriminately awarded subrogation rights to negligent as well as to non-negligent employers. All of which is to say that 'double recovery' was not involved, and is still not involved. Double recovery is involved where a person injured collects *damages* twice. Where a person's injury is caused by two or more joint and several tortfeasors it has ever been the law that a satisfied judgment against any of those responsible is a bar to a second action against the others. Damages, of course, are no part of the Workmen's Compensation Law. Damages for tort are supposed to justly compensate the victim—make him whole as it were. It has never been pretended that specified compensation under the Workmen's Compensation Law even approach making the injured worker whole. In fact, the major underlying premise of the Workmen's Compensation Law is to take from the working man his common law right to sue in tort for damages, and relegate him to the status of an insured under a policy which picks up his medical expenses, gives him a modest weekly stipend while he mends, and an equally modest specific award for the permanent injury. Such does not amount to damages. Payments received from industrial insurance should not be regarded any differently than payments which an injured

workman receives from a health and accident policy which he has purchased full well knowing of the inadequacy of industrial insurance. Such payments are insurance benefits, and in no sense are they damages for tort.

. . . .

"... It would be a travesty indeed to hold that the disqualification of the negligent employer should somehow inure to the benefit of the negligent third-party tortfeasor. I neither know of nor can divine any principle of law which requires that an injured employee must to the extent of payments received elsewhere suffer a reduction of the tort damages he has obtained against a negligent third-party tortfeasor. A question of double recovery it is not. While the tortfeasor, or tortfeasors, should not be required to pay damages twice for the same injury, he or they should not be given the benefit of payments to the injured person which he or they did not make. This is the collateral source doctrine.

. . . .

"... If it is thought to be inequitable that the injured employee have the benefit of this so-called double recovery, as against the third party having it, the language of Justice White in *Edmonds v. Compagnie, supra,* [443 U.S. 256] 99 S.Ct. [2753] at 2762 [61 L.Ed.2d 521] is appropriate: 'Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect.'

. . . .

"A clear-cut principle of law evolved from the Court's unanimous holding in *Liberty Mutual;* by virtue of that decision statutory law was modified to prevent a negligent employer from recovering back compensation payments whether it might attempt to do so from the injury employee or the negligent third party. Today the issue is presented in a slightly different context—with the negligent third party wanting the benefit of those payments which the negligent employer by virtue of

*Liberty Mutual* may not regain. The answer should be exactly the same as it was in *Liberty Mutual* and as forecast by the Court's language in the non-negligent employer case of *Shields v. Wyeth*. A so-called balancing of the equities does not require that the negligent third-party tortfeasor be given the windfall apples which have fallen from the tree of the negligent employer.

" 'It is of significance that, in the case at bench, we are not really talking about the rights and obligations between an employer and third party directly. On the contrary, we are deciding the rights and obligations between an employer's insurance carrier and a third party's insurance carrier. Each insurance company has been paid premiums for undertaking the risks involved. It is neither the employer nor the third party who suffers by virtue of any shifting between the insurance carriers of the responsibility for specified percentages of the damages suffered by the injured employee. Most employers are business entities. The cost of insurance premiums is a cost of doing business which is passed on to the customers of the business. Most third-party tortfeasors are also business entities in which the cost of insurance premiums represent part of the cost of doing business that is paid for by the customers of these entities. Thus, the amount of damages to the injured employee that is paid by the insurance carriers for the employee and the third party is in reality financed by the customers of the employer and the third party. The costs of the awards to injured workers are spread, therefore, among a substantial segment of society.'

*Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board,* 22 Cal.3d 829, 150 Cal.Rptr. 888, 909, 587 P.2d 684, 705 (1978) (Jefferson, J., dissenting).

"A majority vote of the Court membership is, of course, sufficient to change the law. Although *Liberty Mutual v. Adams* antedated my time on the Court, it was in my opinion a well written opinion, joined in by a unanimous Court, and soundly bottomed on the proposition that in this state no one should profit by his own wrong.

"Unfortunately it was destined to a short life, and I am saddened to observe its demise. I more deeply regret that it is laid to rest without the comfort of any epitaph appropriately recognizing that it has now been overruled. Perhaps solace may be found that Idaho is now brought back into line with a clear majority of forty-eight other states which prefer to talk in terms of 'double recovery' to the end that, where a so-called windfall is to be had, the worker in Idaho must give way either to the negligent employer or to the negligent third person."

[2] " ' "Thus, whether an action is brought by the employer or the employee, the third party tortfeasor should be able to invoke the concurrent negligence of the employer to defeat *its* right to reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee." ' " (My emphasis.)

100 Idaho at 606–13, 603 P.2d at 172–179 (Bistline, J., dissenting) (emphasis original).

SHEPARD, Justice, concurring in part and dissenting in part.

While I concur in much of the majority opinion, I must dissent from the result achieved in affirming the final judgment of the trial court. Schneider contends that the damages awarded were grossly inadequate and hence the trial court erred in denying his motion for a new trial or a judgment n.o.v.. I agree. In my view, the *ultimate* award of $6,361.48 for the loss of a thumb is grossly inadequate as a matter of law, notwithstanding Schneider was determined to be 40% negligent and workmen's compensation benefits had been paid on behalf of Schneider. I agree that, as stated by the majority, the trial court possesses discretion in the granting or refusing a new trial. However, in my opinion, such discretion was exercised unwisely and abused in the instant case.

HUNTLEY, Justice, concurring in part and dissenting in part.

I concur in all of the majority opinion except for that portion which holds that the

trial court did not abuse its discretion in failing to require defendants to accept an "additur" or a new trial due to the inadequacy of damages.

The damage award for loss of the thumb was $20,000 prior to that figure being reduced by Schneider's 40% negligence and for the workmen's compensation benefits he had received.

The loss of a thumb is a severe and disabling impediment and the court clearly abused its discretion in failing to correct that aspect of the judgment.