848 P.2d 419

**Raymond E. BARNETT and Joyce Barnett, husband and wife, Plaintiffs–Respondents,**

v.

**EAGLE HELICOPTERS, INC., Defendant–Appellant.**

No. 19526.

Supreme Court of Idaho,
Lewiston, October 1992 Term.

Feb. 25, 1993.

Clements, Brown & McNichols, Lewiston, for appellant. Dean Wullenwaber argued.

Rapaich, Knutson & Chapman, Lewiston, for respondents. Scott M. Chapman argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for amicus curiae. John W. Barrett argued.

McDEVITT, Chief Judge.

## STATEMENT OF THE CASE

In 1986, the Bonneville Power Administration ("BPA") contracted with JOB Line, Inc. ("JOB") to erect a portion of the Taft–Bell 500 kilovolt ("kv") transmission line in North Idaho. The BPA contract required JOB to string high voltage transmission line between towers. This job compelled the use of a helicopter to pull the line as it unwound from a drum in a "triple-drum machine" through a guard structure on top of each tower. Once the line was properly strung, the operator of the triple-drum machine would then pull the line tight across several miles of towers.

Plaintiff Raymond Barnett ("Barnett") worked the triple-drum machine for JOB. Defendant Eagle Helicopters, Inc. ("Eagle") subcontracted a portion of the helicopter work from JOB. On the dawn of August 14, 1986, as the Eagle pilot threaded the transmission towers across Burke Canyon, the line became entangled in a heavy growth of trees lining the power strip. The pilot pulled the line loose causing it to sway and jump from the protective guard atop one of the towers. Although he was told to "hold the pull" which meant either to keep going forward or at least to maintain position, the pilot slacked off causing the line to droop onto a live 115 kv transmission line already in place. Current traveled down the drooping line and electrified the three-drum puller and Barnett who was perched atop the puller.

As a result of the electrocution, Barnett suffered burns on his ears, fingers, and buttocks. In addition, he appears to have permanent hearing, sight, and memory loss, chronic muscle and joint pain, neurological and psychological disorder, and depression. He is unable to work and requires weekly physical and psycho-therapy. Barnett and his wife sued Eagle and R.W. Beck and Associates under general negligence principles, alleging damages for medical expenses, lost wages, pain and suffering, and loss of consortium in excess of $1,000,000.00. Plaintiff's employer, JOB, enjoyed exemption from the action based on a worker's compensation agreement. Eagle attempted to implead the BPA, however, it was forced to dismiss BPA on the grounds that, as a United States government agency, the BPA could not be sued in state court. Shortly before trial, Beck, who had contracted to provide safety inspections on the job, settled with plaintiff

for $20,000.00, thus leaving Eagle as the sole defendant. After twelve days of trial the jury returned a verdict finding Eagle 40% negligent, the BPA and JOB each 30% negligent, and Barnett blameless. Barnett's damages were assessed at $843,040.00, and Mrs. Barnett was awarded $256,960.00 for loss of consortium. Because joint and several liability had not yet been legislatively erased at the time the injury to plaintiff occurred, Eagle was ordered to pay the entire sum.

Upon defendant Eagle's motion to reduce the verdict by the amount paid and payable in worker's compensation benefits by plaintiff's employer, the trial court reduced the verdict for the amount paid, but refused to do so for future amounts payable. Instead, the trial court ordered that plaintiff should reimburse Eagle when actually paid the benefits, up to the total sum of liability attributable to JOB. As of the date of judgment, JOB's insurer has paid $142,221.00 in worker's compensation benefits to or on behalf of Barnett. The stipulated estimated total of Barnett's past and future worker's compensation benefits is $297,720.00. Upon Eagle's motion for a new trial on the issue of excessive compensation for loss of consortium, the trial court found that, although the amount awarded was more than the court would have bestowed, the fiscal gap was not great enough to merit a new trial according to I.R.C.P. 59(a). Eagle has paid $578,175.50 on the principal balance of the judgment. Eagle has deferred payment on the remaining amount owing pending this appeal on two issues only:

I. Whether the trial court improperly refused to reduce the verdict to reflect the present value of worker's compensation benefits due respondent up to the amount of his employer's liability.

II. Whether the trial court improperly refused to grant appellant's motion for a new trial on the issue of loss of consortium.

## STANDARD OF REVIEW

The decision by a trial court to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear and manifest abuse of discretion. *Moses v. Idaho State Tax Comm'n*, 118 Idaho 676, 677, 799 P.2d 964, 965 (1990). On the other hand, the trial court's conclusion to partially reduce the jury verdict was a legal determination based on case law interpretation to which this court owes no deference. *Schneider v. Farmers Merchant*, 106 Idaho 241, 243, 678 P.2d 33, 35 (1983).

## I.

## THE ROLE OF FUTURE DUE WORKER'S COMPENSATION BENEFITS

Idaho statutes set up a scheme whereby an injured employee may hold a third party liable in tort for damages. I.C. § 72–223.[1] An employer who has paid compensation to the employee for the injury is subrogated to the rights of the employee to recover the amount paid from a third party. I.C. § 72–223(3). However, this Court has limited this right to subrogate in cases where the employer also has been determined to be negligent. *Liberty Mutual Ins. Co. v. Adams*, 91 Idaho 151, 155, 417 P.2d 417, 421 (1966); *Schneider v. Farmers Merchant*, 106 Idaho 241, 244, 678 P.2d 33, 36 (1983). Idaho case law has "established a system of apportioning the employee's damages between the employer and third party" based on I.C. § 72–223 where both the employer and third party are adjudged negligent. *Schneider v. Farmers Merchant*, 106 Idaho 241, 243, 678 P.2d 33, 35 (1983). *See Runcorn v. Shearer Lumber Prods.*, 107 Idaho 389, 690 P.2d 324 (1984); *Schneider v. Farmers Merchant*, 106 Idaho 241, 678 P.2d 33 (1983); *Tucker v. Union Oil Co. of Cali-*

---

1. Idaho Code § 72–223 states that recovery against an employer:

   [S]hall not be affected by the fact that the injury ... is caused under circumstances creating in some person other than the employer a legal liability to pay damages therefor, such person so liable being referred to as the third party ... [a]ction may be instituted against such third party by the employee ...

*fornia,* 100 Idaho 590, 603 P.2d 156 (1979); *Liberty Mut. Ins. Co. v. Adams,* 91 Idaho 151, 417 P.2d 417 (1966). According to these cases, any verdict in an action by an employee against a third party must be reduced by the amount of the worker's compensation benefits *paid* to the employee. *Runcorn,* 107 Idaho at 395–96, 690 P.2d at 329; *Schneider v. Farmers Merchant,* 106 Idaho at 245, 678 P.2d at 37; *Tucker v. Union Oil Co. of California,* 100 Idaho at 604, 603 P.2d at 169; *Liberty Mut. Ins. Co. v. Adams,* 91 Idaho at 157, 417 P.2d at 423. This sound legal scheme satisfies several public policy interests including balancing the competing interests of a sheltered employer and an overburdened third party, ensuring against double recovery by an injured victim, preventing an employer and insurer from profiting by its own wrong, and protecting the third party's right of contribution for the comparative negligence of others. *Runcorn,* 107 Idaho at 396, 690 P.2d at 331. Therefore, we hold that the trial court correctly offset the verdict to reflect compensation benefits paid by JOB to Barnett.

Eagle argues that this verdict should be reduced further to reflect JOB's total liability represented by past paid *and future due* compensation benefits. However, the foregoing legal precedent does not permit a trial court to reduce a verdict to reflect *future* due compensation benefits, but only addresses discounts qualified by past paid benefits. Indeed, *Runcorn* states unequivocally that:

> A special verdict form allows the jury to assign the appropriate percentage of liability to the employer in addition to the injured party and the third party. The third party is then allowed a reduction in damages by the percentage of liability attributed to the employer *not to exceed the amount of workman's compensation benefits paid.*

*Runcorn,* 107 Idaho at 396, 690 P.2d at 328. (Emphasis added.) The trial court draws a legally correct distinction between paid and future due benefits, and reasonably resolves respondent's potential windfall by constraining respondent essentially to repay Eagle as future benefits are received up to the amount of JOB's liability.

This solution does not result in double recovery by respondent, because respondent will simply be a conduit through which contribution will flow from JOB to Eagle, as such right to contribution accrues. Appellant's argument is seductive in its simplicity and administrative facility. However, there is no way of ascertaining exactly how much plaintiff will receive in the future as his entitlement is at least partially dependent on his longevity. Moreover, the jury verdict is to be paid in today's dollars and to offset the same by the present value of uncertain future dollars would diminish plaintiff's recovery in a manner not contemplated by the worker's compensation laws. Such result impermissibly shifts the risks of inflation, death, and loss of use-value to the innocent victim. The trial court's resolution is neither legally flawed nor the product of a manifest abuse of discretion, and the decision is thus affirmed.

## II.

### IDAHO CODE § 72–802

■ At oral argument, the amicus curiae argued that the trial court's order to offset the verdict violated the non-assignability provision of I.C. § 72–802. We disagree. The judgment in favor of plaintiff Barnett, as rendered by the jury and reduced by the trial court to reflect worker's compensation benefits paid by JOB Line, is predicated upon compliance with the payover order for benefits received in the future. The payover order does not violate the non-assignment clause of I.C. § 72–802 because plaintiff's claim has not been assigned. Plaintiff will receive his total award from Eagle in accordance with the judgment and pursuant to the court order will pay a sum equal to the worker's compensation benefits actually paid to him by JOB Line to Eagle.

## III.

### LOSS OF CONSORTIUM

■ Idaho Rule of Civil Procedure 59(a)(5) provides that a new trial may be

granted for excessive damages appearing to have been given under the influence of passion or prejudice. If the trial court believes an injustice has occurred because the verdict is excessive or inadequate and likely arrived at by passion or prejudice, assessing the disparity between the jury's award and the judge's own opinion of damages, the court may grant a new trial. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991); *Sawyer v. Claar*, 115 Idaho 322, 324, 766 P.2d 792, 794 (App.1988); *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1987). *See also Stewart v. Rice*, 120 Idaho 504, 817 P.2d 170 (1991); *O'Dell v. Basabe*, 119 Idaho 796, 810 P.2d 1082 (1991). This is a subjective standard, based on the trial court's belief concerning the inadequacy or excessiveness of the award after weighing the evidence.

■ In *Sanchez*, this Court applied I.R.C.P. 59(a)(5), reversing the order below because the trial court failed to specifically enter a finding that the amount of the jury verdict appeared to have been given under the influence of passion or prejudice. *Sanchez*, 112 Idaho at 616, 733 P.2d at 1241. In *Sanchez II*, after the remand, "the trial court found that the amount of the verdict did not shock him, but that he did find it unconscionable. The trial court also found that the amount of the verdict indicated that the jury was acting under the influence of passion or prejudice." *Sanchez v. Galey*, 115 Idaho 1064, 1070, 772 P.2d 702, 708 (1989). As a result, this Court refused to "tinker with the exercise of the trial court's discretion" and affirmed the order requiring a new trial. *Sanchez II*, 115 Idaho at 1070, 772 P.2d at 708. Similarly, in *Pratton v. Gage*, 122 Idaho 848, 840 P.2d 392 (1992), where the trial court failed to specify the basis for its belief that the verdict was given under the influence of passion or prejudice, this Court reversed the order for a new trial. "Such a conclusory statement, unsupported by the identification of any factual basis, is not adequate to illuminate for this Court the rationale for the trial court's findings." *Id.* at 853, 840 P.2d at 397. Properly illuminated, this Court will not overturn a trial court's grant or denial of a motion for new trial absent a manifest abuse of discretion. *Sanchez II*, 115 Idaho at 1070, 772 P.2d at 708.

In this case, it is evident from the ruling that the trial court weighed the evidence, setting out the pertinent facts in some detail, determined the amount it would have awarded, compared the amount with the jury's award, and found a disparity, but not a disparity so great that the court was of the belief that the verdict must have come from passion or prejudice. Further, the trial court found that the award did not shock the conscience. Based on the foregoing, we do not find that the trial court abused its discretion in denying appellant's motion for a new trial.

## IV.

### ATTORNEY FEES

■ This Court's rule governing the award of attorney fees is:

In awarding reasonable attorney fees to the prevailing party on appeal, this Court will be guided by the following general principles. Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation.

*Minich v. Gem State Dev.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Applying this rule to this case, we decline to award attorney fees on appeal to respondents.

Costs to respondents.

BISTLINE, J. and MICHAUD, J., Pro Tem, concur.

JOHNSON, Justice, concurring and dissenting.

I concur in part III (Loss of Consortium) and part IV (Attorney Fees) of the Court's opinion. I respectfully dissent as to part I (The Role of Future Due Worker's Compensation Benefits) and part II (Idaho Code § 72–802).

### THE MEANING OF "LIABILITY."

I.C. § 72–209(2) provides:

The liability of an employer to another person who may be liable for or who has paid damages on account of an injury or occupational disease or death arising out of and in the course of employment of an employee of the employer and caused by the breach of any duty or obligation owed by the employer to such other person, shall be limited to the amount of compensation for which the employer is liable under this law on account of such injury, disease, or death, unless such other person and the employer agree to share liability in a different manner.

This statute clearly states that the liability of the employer is limited to the amount of compensation for which the employer is liable, not the amount of compensation paid by the employer. If "liability" meant "paid," provisions of the workers' compensation act such as I.C. § 72–404 would be meaningless. I.C. § 72–404 states:

Whenever the commission determines that it is for the best interest of all parties, the liability of the employer for compensation may, on application to the commission by any party interested, be discharged in whole or in part by the payment of one or more lump sums to be determined, with the approval of the commission.

Substituting "paid" for "liability" would cause this section to provide that the Commission could approve a lump sum payment to discharge the payments already made to the claimant. This is not a reasonable reading of the intent of the legislature. "Liability" means "liability," not "paid."

Each of the cases cited by the Court in support of its opinion on this issue is distinguishable. In *Runcorn*, the Court stated: "The district court ... refused to reduce the award by the amount of the workmen's compensation benefits already received." 107 Idaho at 392, 690 P.2d at 327. This indicates that the third party requested reduction of the judgment only by the amount of benefits already received. In *Schneider*, the third party's motion to reduce the judgment requested a reduction only "of the amount of workmen's compensation benefits Schneider had received." 106 Idaho at 242, 678 P.2d at 34. In *Tucker*, the third party "moved that the judgment be amended by reducing the amount thereof in the sum of the workmen's compensation benefits received by Tucker." 100 Idaho at 593, 603 P.2d at 159. *Liberty Mutual* was decided before the enactment of I.C. § 72–209. In *Liberty Mutual*, the Court addressed the liability of the third party to the employer under an indemnity agreement between the employee and the third party, who had settled with the employee. In this context, the Court addressed only whether the third party "was liable for reimbursement of the sum paid [the employee] under the workmen's compensation law." 91 Idaho at 154, 417 P.2d at 420.

### ASSIGNABILITY OF COMPENSATION NOT RAISED AS ISSUE ON APPEAL.

The Court addresses the issue of the legality of the trial court's payover order under the non-assignability provisions of I.C. § 72–802. Eagle did not list this as an issue on appeal in its briefs, nor was the question presented by Eagle in the trial court. The issue was injected only by the amicus curiae on oral argument to this Court. In my view, the amicus may not enlarge the issues to be considered on appeal, but may only address those properly presented to the Court by the parties. I note that the petition to appear as amicus curiae did not mention that the amicus intended to inject this new issue. We should not address the implication of I.C. § 72–802 in this case.

BAKES, J., Pro Tem (following retirement on February 1, 1993), joins with JOHNSON, J.