IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39750

| | | |
|---|---|---|
| RUBIO IZAGUIRRE, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, June 2013 Term |
| | ) | |
| v. | ) | 2013 Opinion No. 97 |
| | ) | |
| R&L CARRIERS SHARED SERVICES, | ) | Filed: August 30, 2013 |
| LLC, Employer ZURICH AMERICAN | ) | |
| INSURANCE CO., Surety, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendants-Respondents. | ) | |
| ———————————————— | ) | |

Appeal from the Industrial Commission, State of Idaho.

The decision of the Industrial Commission is affirmed.

Richard S. Owen, Nampa, argued for appellant.

Elam & Burke, Boise, for respondents. Jon Bauman argued.

————————————

J. JONES, Justice.

This Industrial Commission appeal deals with the extent of subrogation rights of an employer or its surety. The claimant, Rubio Izaguirre, settled with a third-party tortfeasor following a work-related automobile accident. His employer and surety asserted a right of subrogation against the entirety of that settlement, minus only a deduction for attorney fees and costs. Izaguirre argued that subrogation rights should extend only to damages that workers' compensation typically insures and not to pain and suffering. The Commission found in favor of the employer and surety, holding that "[t]he entire proceeds of the settlement" were subject to subrogation. Izaguirre timely appealed and we affirm.

## I.
### FACTUAL AND PROCEDURAL HISTORY

Izaguirre was a truck driver for R&L Carriers Shared Services, LLC (Employer). On February 28, 2008, while on the job, Izaguirre was involved in a motor vehicle collision. His

resulting knee injuries caused him to miss work, led to a surgery, and persisted until he was eventually terminated by his employer.

In June of 2008, Izaguirre and his wife retained an attorney to bring an action against the driver who caused the accident. This action sought recovery for Izaguirre's damages and included a claim by Izaguirre's wife for loss of consortium. The Izaguirres settled their claims for $200,000 and entered into a Release of All Claims and Indemnity Agreement (Release Agreement) with the third party and his insurance carrier. Izaguirre's attorney subsequently drafted a letter that "[broke] down the total settlement, attributing $100,000 to Mrs. Izaguirre's claim for loss of consortium and $100,000 to Claimant's personal injury claim." At this time, Zurich American Insurance (Surety) "had a subrogated interest of $43,518.65." The Surety and the Izaguirres "agreed to the payment of a 25% attorney fee on the recovery of the subrogated amount," so the Izaguirres' attorney "reimbursed $32,623.99 to Surety, and retained $10,879.66 payable as attorney fees."

Izaguirre filed a Workers' Compensation Complaint on July 9, 2010, seeking "[a]dditional medical benefits, TTD benefits, PPI benefits and attorney fees for unreasonable denial and/or delay in benefits due." The Surety and Employer (the Respondents) filed their Answer on July 23, 2010. Izaguirre filed a request for calendaring on December 17, 2010, asking that the matter be set for hearing on the merits after January 1, 2011. On March 21, 2011, the Respondents filed a motion to bifurcate the proceedings and stay consideration of the merits until after the subrogation issues were decided. In that motion, the Respondents argued:

> The potential limitation on R&L Carriers' right of subrogation raised by Claimant's contention requires that the Commission interpret Idaho law to determine issues including: (1) the threshold question of whether the [Release Agreement] permits or effects a limitation on R&L Carriers' right of subrogation guaranteed by Idaho Code § 72-223; (2) whether the characterization of the recovery as among Claimant, his wife, and the third parties is binding on R&L Carriers; and (3) whether workers' compensation benefits are community property and, if so, whether a recovery for loss of consortium is also community property.

Izaguirre opposed the motion, arguing that the Commission had no jurisdiction to consider whether the Surety's subrogation rights extended to any of the settlement funds attributed to Mrs. Izaguirre's claim for loss of consortium. The Commission found it appropriate to bifurcate the proceeding to address the threshold legal issues pertaining to subrogation rights and set a hearing before the full Commission for that purpose. The Commission's order provided that the issues on

the merits of Izaguirre's compensation claim "shall be reserved and held in abeyance for a future hearing." The Commission issued a subsequent Order Amending Hearing Issues on June 23, 2011, specifying the issues to be determined at the hearing.

Following the bifurcated hearing, the Commission entered its Findings of Fact, Conclusions of Law, and Order (Decision) on January 31, 2012. In it, the Commission made four main findings: (1) that it had jurisdiction to evaluate the claims in the Release Agreement and "determine which claims will be subject to [Respondents'] right of subrogation under Idaho Code § 72-223"; (2) that the "entire proceeds of the settlement of [Izaguirre's] claim" are subject to subrogation, whereas Mrs. Izaguirre's loss of consortium claim was not; (3) that the consortium claim was valued at $9,000; and (4) that the Release Agreement would be enforced as agreed upon by the parties, but that "on the balance of the settlement proceeds subject to Surety's right of subrogation ($147,481.35), Surety is obligated to pay the sum of $51,845.25 as its proportionate share of attorney fees and costs incurred by Claimant in pursuit of the third party recovery." The Commission further held that "this decision is final and conclusive as to all issues adjudicated." Izaguirre timely appealed, claiming the Commission erred in ruling that the "entire proceeds of the settlement" were subject to subrogation.[1]

## II.
## ISSUES ON APPEAL

  I.    Was the Decision a final and appealable order?

  II.    Do the terms of the Release Agreement provide an independent basis for requiring Izaguirre to reimburse the Respondents?

 III.    Does a surety's right to subrogation under I.C. § 72-223 extend to the entire proceeds of a third-party recovery?

## III.
## DISCUSSION

### A. Standard of Review.

The facts pertinent to this appeal are not in dispute. The issues presented on appeal are issues of law. When reviewing Industrial Commission decisions, this Court "exercises free review over questions of law." *Curtis v. M.H. King Co.*, 142 Idaho 383, 385, 128 P.3d 920, 922 (2005).

### B. The Commission's Decision was an appealable order.

---

[1] Neither party contests on appeal the Commission's conclusions or reasoning with respect to Mrs. Izaguirre's consortium claim.

The Respondents argue that the Decision is not appealable under Idaho Appellate Rule (I.A.R.) 11(d) because it is "clearly not a final determination of all of Izaguirre's claims in this case." Because the Commission bifurcated the case and specifically "reserved and held in abeyance for a future hearing" Izaguirre's claim for workers' compensation benefits, they claim his appeal is "premature and should be dismissed." Respondents assert the Court "must address finality even if the parties fail to raise it because the issue is jurisdictional." Izaguirre counters that in many cases this Court has accepted appeals from bifurcated decisions, so long as the decisions "contained full and final decisions and findings as to those issues actually adjudicated." He argues that this is one of those cases, and that "this appeal is appropriate and should proceed."

Idaho Appellate Rule 11(d) states that an appeal may be taken to this Court as a matter of right "[f]rom any final decision or order of the Industrial Commission or from any final decision or order upon rehearing or reconsideration by the administrative agency." Rule 11(d), like the other appellate rules, is a court made rule governing appellate proceedings. I.A.R. 1. It has no bearing on the jurisdiction of the Supreme Court, which is established under the Idaho Constitution. Article V, section 9 of the Idaho Constitution provides that "[t]he Supreme Court shall have jurisdiction to review . . . any order of the industrial accident board," which is now the Industrial Commission. While I.A.R. 11(d) specifies the decisions and orders that may be appealed as a matter of right from the Industrial Commission, that rule does not limit the Court's constitutional grant of plenary jurisdiction to review *any* order of the Commission. This Court can always exercise its discretion to consider additional matters under its plenary jurisdiction. ID. CONST. art. V, § 9. *See State v. Leavitt*, 153 Idaho 142, 145, 280 P.3d 169, 172 (2012); *State v. Bicknell*, 140 Idaho 201, 203, 91 P.3d 1105, 1107 (2004).

The Court sparingly exercises its prerogative to entertain appeals that are within its plenary jurisdiction but which may not fully meet the criteria in the appellate rules. Where a case presents an important issue that will provide helpful guidance to the affected legal community, there is some value in resorting to our plenary jurisdiction to consider and decide it. This is such a case. As indicated by the fact that the Idaho Trial Lawyers Association Foundation filed an amicus curiae brief in this case on behalf of Izaguirre, there is a good deal of interest in the outcome of the dispute. Indeed, during oral argument Respondents' counsel conceded that a decision of the subrogation issues by the Court would be helpful. Decision of those issues will

4

resolve a significant part of the case, perhaps facilitating a resolution of the remaining issues in dispute.

**C. Respondents' argument that the Release Agreement gives them third-party beneficiary status was not properly raised below or on appeal and will not be considered.**

Respondents argue that the Release Agreement itself requires Izaguirre to satisfy its subrogation interest from the entirety of the settlement proceeds. They assert that the language of the Release Agreement "could not be clearer in regards to Izaguirre's obligation to repay Respondents out of the settlement proceeds"—in effect, by making the Respondents third-party beneficiaries. Thus, they contend that Izaguirre's obligations under the Release Agreement provide an alternative basis for affirming the ruling of the Commission. The Respondents have not favored the Court with an explanation of why any party to the Release Agreement might have been motivated to place an affirmative requirement on Izaguirre to pay or repay any obligation to them, rather than just agreeing to a garden variety hold harmless.

Izaguirre counters by contending that: (1) this argument was not raised before the Commission below and (2) interpretation of contracts is outside of the jurisdiction of the Commission. Because we find Izaguirre correct as to his first contention, we need not delve into his second.

This Court has often stated that "[i]ssues not raised below and presented for the first time on appeal will not be considered for review." *Higgins v. Larry Miller Subaru-Mitsubishi*, 145 Idaho 1, 6, 175 P.3d 163, 168 (2007). Further, "[i]t is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *Krempasky v. Nez Perce Cnty. Planning & Zoning*, 150 Idaho 231, 236, 245 P.3d 983, 988 (2010).

The Commission gave the parties at least two opportunities to request the issues they wished to be considered in conjunction with the bifurcated hearing on subrogation. The Respondents did not on either occasion request consideration of their third-party beneficiary theory. That theory was not argued to the Commission, nor was the issue decided by the Commission. There is absolutely no basis to consider the issue on appeal.

**D. Based on the language of I.C. § 72-223, the subrogation rights of an employer or its surety extend to the entire proceeds of a third-party recovery.**

The lone substantive issue facing this Court on appeal is the extent to which the proceeds of a third-party recovery are subject to subrogation rights under I.C. § 72-223. Izaguirre advanced two arguments before the Commission on this issue. First, he argued that the plain language of I.C. § 72-223(3) demonstrates a legislative intention to limit a surety's right of subrogation from a third-party recovery to the specific elements of damages for which workers' compensation benefits are payable. That is, since workers' compensation benefits do not compensate for pain and suffering, the right of subrogation does not extend to that portion of a third-party settlement or judgment. Second, Izaguirre cites to *Struhs v. Protection Technologies, Inc.*, 133 Idaho 715, 992 P.2d 164 (1999), asserting that the holding therein does not prohibit a claimant from seeking protection of certain elements of a third-party recovery from a subrogation claim by a surety when the allocation is determined at a contested hearing.

The Commission disagreed on both points. With regard to Izaguirre's interpretation of *Struhs*, the Commission stated:

> In the context of the question of whether or not a portion of the proceeds of a third party settlement are not subject to the I.C. § 72-223 right of subrogation, *Struhs* is just as important for what it does not say, as what it says. Having specifically found that the claimant in *Struhs* could not affect the surety's right of subrogation by incorporating certain language into the third party settlement to which surety was not a party, the Court concluded that the language of the agreement must be ignored, and that surety's right of subrogation was deemed to extend to the <u>entire</u> third party recovery. Had the Court been of the view that I.C. § 72-223 limited surety's right of subrogation to that portion of the proceeds of a third party recovery which corresponded to workers' compensation benefits paid, it would, presumably, have found it necessary to remand the matter to the Commission for further proceedings along the lines of the inquiries which are before the Commission in the instant matter. That the Court did not do this in *Struhs*, is telling . . . .

The Commission found that the *Struhs* case, and its implications, reinforced the plain meaning of I.C. § 72-223—that there was no "intention on the part of the legislature to limit a surety's subrogated interest in a third-party recovery to that portion of the third-party recovery which corresponds to a benefit payable under the workers' compensation laws of this state."

On appeal, Izaguirre contends that the Commission interprets the *Struhs* holding much too broadly. His reading is that *Struhs* stands only for "the proposition that a Claimant cannot unilaterally characterize his third party settlement in such a way as to affect the employer's statutory right of subrogation." Izaguirre argues that this holding is inapposite here, that "[t]he

6

posture of this case is much different than the posture of the *Struhs* case, and [that] the precise question presented herein has never before been addressed [by] the Industrial Commission" or by this Court. Izaguirre further argues that the plain language of I.C. § 72-223 evinces a legislative intention to limit a surety's right of subrogation from a third-party settlement. As he puts it, the Legislature's restrictive "use of the modifier, 'compensation,' when describing the extent of an employer's right of subrogation," shows an intention to limit those subrogation rights. Izaguirre contends that the intention was to limit a surety's subrogated interest in a third-party recovery to "that portion of the third party recovery which corresponds to a benefit payable under the workers' compensation laws of this state." He accordingly concludes this would not extend to damages for pain and suffering.

The Respondents argue in agreement with the Commission, contending that "Izaguirre reads a limit into [I.C. § 72-223] that does not exist." They aver in particular that while the statute may well contain a limitation, "it is not a limitation on [the Respondents'] subrogation right as to the type of damages to which their subrogation right attaches." Rather, the Respondents argue, "this language simply serves as a limit or cap on the amount of Respondents' subrogation right against the third party tortfeasor."

In Idaho there is "no question but that an injured employee may receive workmen's compensation benefits and thereafter bring a negligence action against a third-party tortfeasor who was a nonemployer." *Schneider v. Farmers Merch., Inc.*, 106 Idaho 241, 243, 678 P.2d 33, 35 (1983). If an employee does bring such a suit "against a third party in addition to receiving workmen's compensation benefits, this Court has established a system of apportioning the employee's damages between the employer and third party." *Id.* The mechanism for doing so is found in I.C. § 72-223. *Id.*; *Barnett v. Eagle Helicopters, Inc.*, 123 Idaho 361, 363, 848 P.2d 419, 421 (1993). I.C. § 72-223(3) provides:

> (3) If compensation has been claimed and awarded, the employer having paid such compensation or having become liable therefor, shall be subrogated to the rights of the employee, to recover against such third party to the extent of the employer's compensation liability.

"Compensation" is broadly defined in Title 72 as "any or all of the income benefits and the medical and related benefits and medical services." I.C. § 72-102(7).

In determining the meaning of I.C. § 72-223, we do not confine our analysis solely to subsection (3), because "our duty is to ascertain, if possible, from a reading of the whole act . . .

7

the purpose and intent of the legislature and give force and effect thereto." *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539, 797 P.2d 1385, 1387 (1990). "Statutes must also be construed as a whole without separating one provision from another." *Id.*

Section 72-223 appears to place no limits on the extent of an employer's recovery—just that the employer can recover "to the extent of the employer's compensation liability." I.C. § 72-233(3). One could easily read "employer's compensation liability" as simply the amount that the employer paid in benefits to the claimant. However, Izaguirre avers that "compensation liability" limits the surety to recovering only those portions of a third-party settlement that correspond to what workers' compensation insures and that a "surety should not have any access to that part of the settlement . . . which is attributable to . . . pain and suffering." But this latter interpretation does not follow from I.C. § 72-223(4), which goes on to state that "[u]nless otherwise agreed, upon any recovery by the employee against the third party, the employer shall pay or have deducted from its subrogated portion thereof, a proportionate share of the costs and attorney's fees incurred by the employee." The crucial takeaway from subsection (4) is that *any* recovery obtained from a third party is subject to subrogation. The provision makes no exception for pain and suffering. Beyond this, I.C. § 72-223(4) makes a specific exception for attorney fees but does not carve out an exception for pain and suffering. Further, subsection (5) provides:

> If the amount recovered from the third party exceeds the amount of the subrogated portion payable to the employer for past compensation benefits paid, then to the extent the employer has a future subrogated interest in that portion of the third party recovery paid to the employee, the employer shall receive a credit against its future liability for compensation benefits.

Again, there is no language indicating that the third-party recovery is to be segregated out into its individual elements or that certain portions are to be protected from the employer's right of subrogation. A proper reading of the statute requires that "employer's compensation liability" be interpreted as Respondents urge—not as a limit on the type of damages subject to subrogation, but as a cap on the amount. Put simply, the most coherent reading of I.C. § 72-223 is that an employer or its surety may recover the full amount of their payments, less attorney fees, out of a recovery against a third party.[2]

In *Schneider*, we described the "system of apportioning the employee's damages," which is based on I.C. § 72-223, as follows:

---

[2] Of course, any excess recovery would go to the workers' compensation claimant. *Shields v. Wyeth Lab., Inc.,* 95 Idaho 572, 574, 513 P.2d 404, 406 (1973).

8

Based on our focus in apportionment, and on the foundation of § 72-223, the system of apportionment generally works as follows. In those situations where the employer is not negligent, the employer is entitled to subrogate to the employee's recovery against a third party, and thus obtain a reimbursement of the workmen's compensation benefits he paid. Conversely, in those situations where the employer is negligent, the employer is denied this reimbursement and the third party is entitled to a credit against his judgment in the amount of the workmen's compensation benefits the employer paid. Thus, the employee's award is reduced by the amount of workmen's compensation he received. In either event, the employee does not retain both the workmen's compensation benefits and the full tort recovery.

*Id.* at 244, 678 P.2d at 36. Nothing in *Schneider* speaks of dividing the recovery into its component parts or disallowing recovery as against damage elements not specifically payable under the workmens' compensation law. The decision does speak of preventing a double recovery by the workers' compensation claimant.

As noted above, both parties cite our *Struhs* decision in support of their respective interpretation of "employer's compensation liability." In *Struhs*, the Court examined a workers' compensation claim in which the claimant settled with a third party. 133 Idaho at 721, 992 P.2d at 170. The claimant and the third party, acting with no input from the surety, "voluntarily characterized the settlement as 'general damages.'" *Id.* at 722, 992 P.2d at 171. Thus, the claimant argued, the terms of the settlement "barred the [surety] from recovering reimbursement from the settlement monies" for workers' compensation benefits that had already been paid. *Id.* at 721, 992 P.2d at 170.

In examining the issues in *Struhs*, the Court noted at the outset that the purposes of workers' compensation subrogation "would [not] be [accomplished] by a rule that forbids recovery by an employer who voluntarily pays benefits." *Id.* at 719, 992 P.2d at 168. We stated:

It is a matter of first impression before this Court whether an agreement between a third-party tortfeasor and an injured employee can restrict the employer's subrogation rights. In automobile insurance cases, we have held that an insurer is not bound by a decision to which it was not a party. . . . Employers have a statutory right to subrogation, and any characterization of damages to which the employer is not privy cannot change the employer's statutory rights. A contrary holding could lead to situations where employees and third-party tortfeasors reached unilateral agreements that would give the employee a double recovery or result in the culpable party not shouldering its full responsibility for damages— results that would be diametrically opposed to the purposes of the subrogation statute. . . . Therefore, we hold that an employee and third party's unilateral actions cannot restrict an employer's subrogation rights.

*Id.* at 721, 992 P.2d at 170. However, as the Commission noted in its Decision, the Court did not remand the matter to the Industrial Commission for further proceedings, but instead, "affirm[ed] the Industrial Commission's conclusion that [the surety] could exercise its subrogation rights." *Id.* As the Commission puts it, had this Court "been of the view that I.C. § 72-223 limited surety's right of subrogation to that portion of the proceeds of a third party recovery which corresponded to workers' compensation benefits paid, it would, presumably, have found it necessary to remand the matter to the Commission for further proceedings." The *Struhs* Court, however, did not remand for an apportionment of the claimant's settlement, implying that apportionment would have no bearing on the surety's subrogation rights. Put simply, *Struhs* suggests that those subrogation rights correspond solely to the surety's outlays, minus attorney fees.

Perhaps Izaguirre's best argument is an equitable one—as he puts it, "allowing the surety to access damages which the Industrial Commission finds to be attributable to pain and suffering essentially enlarges the rights of the surety to recover against that which it does not insure; all at the expense of the Claimant's just recovery." While there may be merit in his equitable argument, as a legal matter the text of the statute and this state's case law go against him. If the Legislature deems this result inequitable, it may change the statute accordingly. We find no legal grounds to disturb the Commission's determination of this issue.

## IV.
## CONCLUSION

The Decision of the Industrial Commission is affirmed. We decline to declare a prevailing party and award costs on appeal. Although the Respondents did not file a cross-appeal, they raised two issues of questionable merit—lack of jurisdiction by this Court and the third party beneficiary claim—on both of which they failed to prevail.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.